**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HOWARD M. RENSIN, TRUSTEE OF THE RENSIN JOINT TRUST, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES CELLULAR CORPORATION, LAURENT C. THERIVEL, DOUGLAS W. CHAMBERS, and TELEPHONE AND DATA SYSTEMS, INC., <br><br> Defendant. | No. 1:23-cv-02764 <br><br> Honorable Mary M. Rowland |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
<u>PLAINTIFF'S MOTION TO STRIKE</u>**

## TABLE OF CONTENTS

INTRODUCTION.............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

I.    THE COURT CAN PROPERLY CONSIDER EACH EXHIBIT THAT
ACCOMPANIES THE MOTION TO DISMISS............................................................ 2

    A.    Applicable Legal Standard.................................................................................. 2

    B.    Class Period Earnings Call Transcripts that Contain the Challenged Statements and
"Corrective" Disclosure, and Accompanying Documents, Are Incorporated by
Reference and Judicially Noticeable. ................................................................... 4

    C.    Risk Disclosures Expressly Incorporated by Reference in All 2022 Earnings
Calls, Including the Earnings Calls Containing the Challenged Statements,
Are Judicially Noticeable. .................................................................................. 6

    D.    Pre-Class Period Disclosures of Churn Rates and Customer Additions Which
Provide Context With Respect To Pre-Class Allegations in the Complaint Are
Judicially Noticeable or Subject to Incorporation by Reference................................ 7

    E.    Post-Class Period Disclosures Relevant to Plaintiff's Allegations that Financial and
Subscriber Results Post-Dating the Challenged Statements Render Those
Statements Misleading Are Judicially Noticeable........................................................ 9

    F.    Post-Class Period Earnings Call Transcript Used by Plaintiff to Allege Scienter Is
Incorporated by Reference................................................................................. 10

    G.    Analyst Reports Cited by Plaintiff Are Incorporated by Reference......................... 10

    H.    Documents Filed with the SEC Used for Clarifying Context, Such as to
Supply the Definition of Terms Frequently Used in Earnings Calls, Are
Judicially Noticeable........................................................................................... 11

CONCLUSION ............................................................................................................. 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*188 LLC v. Trinity Indus., Inc.*,
  300 F.3d 730 (7th Cir. 2002) ...............................................................................................1, 2

*Baker v. Nw. Med. Lake Forest Hosp.*,
  No. 16-CV-05669, 2017 WL 2908766 (N.D. Ill. July 7, 2017).................................................2

*Baron v. Hyrecar Inc.*,
  No. 2:21-CV-06918, 2022 WL 17413562 (C.D. Cal. Dec. 5, 2022).......................................3

*Bogie v. Rosenberg*,
  705 F.3d 603 (7th Cir. 2013) ..................................................................................................2

*Desai v. Gen. Growth Props., Inc.*,
  654 F. Supp. 2d 836 (N.D. Ill. 2009) ......................................................................................6

*In re Energy Recovery Inc. Sec. Litig.*,
  No. 15-CV-00265, 2016 WL 324150 (N.D. Cal. Jan. 27, 2016).............................................3

*Fin. Fiduciaries, LLC v. Gannett Co.*,
  46 F.4th 654 (7th Cir. 2022) .................................................................................................11

*Fryman v. Atlas Fin. Holdings, Inc.*,
  462 F. Supp. 3d 888 (N.D. Ill. 2020) ..........................................................................1, 2, 4, 11

*Goucher v. Iterum Therapeutics*,
  648 F. Supp. 3d 962 (N.D. Ill. 2022) ......................................................................................7

*Khoja v. Orexigen Therapeautics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ..................................................................................................4

*In re Midway Games, Inc. Sec. Litig.*,
  332 F. Supp. 2d 1152 (N.D. Ill. 2004) .........................................................................1, 2, 11

*In re OSI Pharms., Inc. Sec. Litig.*,
  No. 04-CV-5505, 2007 WL 9672541 (E.D.N.Y. Mar. 31, 2007)............................................3

*Plumbers & Pipefitters Loc. Union No. 630 Pension-Annuity Tr. Fund v.*
  *Allscripts-Misys Healthcare Sols., Inc.*,
  778 F. Supp. 2d 858 (N.D. Ill. 2011) ....................................................................................3, 6

*Rock Hemp Corp. v. Dunn*,
  51 F.4th 693 (7th Cir. 2022) ..................................................................................................2

*SEC v. Kameli*,
  2020 WL 2542154 (N.D. Ill. May 19, 2020)...........................................................................4

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)...............................................................................................1, 3, 4

*In re Zynga Inc. Sec. Litig.*,
    No. C 12-04007, 2015 WL 1382217 (N.D. Cal. Mar. 25, 2015)................................................4

**Other Authorities**

Fed. R. Civ. P. 12(b) ............................................................................................................1, 3

Fed. R. Evid. 201 .......................................................................................................................3

**INTRODUCTION**

In filing their Motion to Dismiss,[1] Defendants attached the earnings call transcripts, associated presentations, and analyst reports cited throughout the complaint and incorporated therein by reference, *see In re Midway Games, Inc. Sec. Litig.*, 332 F. Supp. 2d 1152, 1155 n.1 (N.D. Ill. 2004) (considering "SEC filings, press releases, and conference calls submitted with Defendants' motion" because they were "referred to [in plaintiff's complaint] and central to plaintiffs' claims"), as well as disclosures filed with the SEC, which are subject to judicial notice, *see Fryman v. Atlas Fin. Holdings, Inc.*, 462 F. Supp. 3d 888, 894, 895 n.3 (N.D. Ill. 2020) (considering SEC filings, press releases, and conference call transcripts, and noting "judicial notice may be taken of the contents of public record disclosure documents filed with the SEC if the facts sought to be noticed are not subject to dispute"). The SEC filings themselves are closely related to the documents incorporated by reference—for instance, they include the press releases accompanying the earnings calls at which the challenged misstatements were made, and set forth the risk factors expressly referred to and incorporated into those calls.

These types of documents are routinely considered by courts in deciding a motion to dismiss a securities fraud claim. That is because a plaintiff is not permitted to a evade a motion to dismiss by "artful pleading or by failing to attach relevant documents." *188 LLC v. Trinity Indus., Inc.,* 300 F.3d 730, 735 (7th Cir. 2002); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322–23 (2007) ("[C]ourts ***must consider*** the complaint in its entirety, ***as well as other sources courts ordinarily examine*** when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court

---

[1] Except where noted, capitalized terms have the definitions set out in the Defendants' Memorandum in Support of their Motion to Dismiss (Dkt. 36) (the "Brief") and Defendants' Reply in Support of their Motion to Dismiss, filed concurrently herewith.

may take judicial notice.") (emphases added). In seeking to strike these materials, Plaintiff attempts to engage in precisely this sort of artful pleading. The Court should not sanction this effort to conceal the material crucial to Plaintiff's Complaint, and should deny Plaintiff's Motion to Strike in full.[2]

## ARGUMENT

### I.     THE COURT CAN PROPERLY CONSIDER EACH EXHIBIT THAT ACCOMPANIES THE MOTION TO DISMISS.

#### A.     Applicable Legal Standard

***Incorporation by reference.*** A court may "'examine documents that a defendant attached to a motion to dismiss ... if they are referred to in the plaintiff's complaint and are central to her claim.'" *In re Midway Games,* 332 F. Supp. 2d 1152, at 1155 n.1; *Fryman*, 462 F. Supp. 3d, at 894–95 (similar). "The purpose ... is to prevent parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents." *188 LLC,* 300 F.3d at 735. Moreover, "[w]hen an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (addressing extrinsic sources "attached to or referenced in a complaint"); *see also Baker v. Nw. Med. Lake Forest Hosp*., No. 16-CV-05669, 2017 WL 2908766, at *4 (N.D. Ill. July 7, 2017) ("A document outside the pleadings controls when it is incorporated by reference … and directly contradicts the assertions in the complaint.").

---

[2] Plaintiff's argument that Defendants did not state the basis for the Court's ability to consider the Exhibits (Mot. to Strike at 4–5) fails. Defendants cited caselaw providing explicit support for the two key legal principles (neither of which Plaintiff disputes), permitting the Court to consider the exhibits to the Motion to Dismiss. All of the cases Plaintiff cites in support of his claim that Defendants failed to provide sufficient support for their request for judicial notice and incorporation by reference concern very different circumstances, where the party advanced a complicated argument and, for example, offered "no citations." *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 704–05 (7th Cir. 2022) (addressing a motion for reconsideration of a decision on a motion to dismiss).

*Judicial notice.* Under Federal Rule of Evidence 201, a court may take judicial notice of "a fact that is not subject to reasonable dispute" where it (1) "is generally known within the trial court's territorial jurisdiction;" or (2) "can be accurately and readily determined." Fed. R. Evid. 201 (Mot. to Strike at 3–4). "[C]ourts may take judicial notice of public documents such as SEC filings." Mot. to Strike at 4. Each exhibit that accompanies the Motion to Dismiss is a "source[] courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss" because it is either a "document[] incorporated into the complaint by reference" or a document "of which a court may take judicial notice." *Tellabs*, 551 U.S. at 322–23. The Court can, therefore, properly consider each exhibit—and, in fact, must consider the documents essential to assessing Plaintiff's claims regarding Defendants' disclosures in their proper context. *See Plumbers & Pipefitters Loc. Union No. 630 Pension-Annuity Tr. Fund v. Allscripts-Misys Healthcare Sols., Inc.* ("*Allscripts*"), 778 F. Supp. 2d 858, 878 (N.D. Ill. 2011).

Throughout his Motion, Plaintiff cites many cases, many out-of-circuit and many in contexts far removed from securities litigation. None establish that the Court cannot consider the exhibits at issue. In fact, even Plaintiff's own authorities make clear that documents such as earnings call transcripts and SEC filings can be—and frequently are—considered by courts on a motion to dismiss a securities fraud case. *See, e.g.*, *Baron v. Hyrecar Inc.*, No. 2:21-CV-06918, 2022 WL 17413562, at *5–6 (C.D. Cal. Dec. 5, 2022) (Mot. to Strike at 6) (taking judicial notice of or incorporating by reference 16 exhibits including SEC filings and investor call transcript); *In re OSI Pharms., Inc. Sec. Litig.*, No. 04-CV-5505, 2007 WL 9672541, at *6 (E.D.N.Y. Mar. 31, 2007) (Mot. to Strike at 8, 9, 14) (taking judicial notice of documents filed with the SEC and considering press releases relied on by plaintiffs in drafting complaint); *In re Energy Recovery Inc. Sec. Litig.*, No. 15-CV-00265, 2016 WL 324150, at *3–4 (N.D. Cal. Jan. 27, 2016) (Mot. to

3

Strike at 8) (taking judicial notice of 15 exhibits including SEC filings and transcripts of earnings calls). Moreover, as these cases demonstrate, Plaintiff's suggestion that it is somehow unreasonable to file "*eighteen* Exhibits spanning approximately 200 pages" in connection with Defendants' Motion to Dismiss Plaintiff's 86-page Complaint (Mot. to Strike at 1, 4 (emphasis in original)), is unwarranted. To the contrary, it is typical. *See also Fryman*, 462 F. Supp. 3d, at 894, 895 n.3 (N.D. Ill. 2020) (considering 25 exhibits).

Each of these documents should be considered by the Court for the reasons set out below.

**B.** **Class Period Earnings Call Transcripts that Contain the Challenged Statements and "Corrective" Disclosure, and Accompanying Documents, Are Incorporated by Reference and Judicially Noticeable.**

**Exhibits H, K, and M** are, respectively, the transcripts from the May 6, 2022 and August 5, 2022 earnings calls at which the challenged statements were made, and the November 4, 2022 earnings call at which the allegedly corrective disclosures were made. Those calls are referenced extensively throughout the Complaint. *See, e.g.*, Am. Compl. ¶¶ 104–107, 109, 112–15, 125. Though Plaintiff argues to the contrary (Mot. to Strike at 13–14), the Court cannot consider Plaintiff's arguments regarding disclosures made in those transcripts without considering the transcripts in their entirety. *Tellabs,* 551 U.S., at 322–23; *see also SEC v. Kameli*, 2020 WL 2542154, at *25 (N.D. Ill. May 19, 2020) (Opp. at 9) ("The test for whether a statement is materially misleading" is "whether the defendants' representations, taken together ***and in context***, would have mislead a reasonable investor.") (emphasis added).[3]

---

[3] Plaintiff's case citations do not establish anything to the contrary. *Zynga* concerned judicially noticed documents, not documents incorporated by reference. *In re Zynga Inc. Sec. Litig.*, No. C 12-04007, 2015 WL 1382217, at *4 (N.D. Cal. Mar. 25, 2015) (Mot. to Strike at 15). Plaintiff also misconstrues *Khoja v. Orexigen Therapeautics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (Mot. to Strike at 15); *see also id.* at 8, 9, 11, 13. As *Khoja* explained, the very purpose of the incorporation by reference doctrine is to "prevent[] plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id.* at 1002.

4

**Exhibit F** is the presentation that, along with the transcript (Exhibit K), represents the record of the August 5, 2022 earnings call at which several of the challenged statements were made. That call is referenced extensively throughout the Complaint, *see, e.g.* Am. Compl. ¶¶ 112–15. Plaintiff additionally notes that "a recording of [the call] was contemporaneously uploaded to the Companies' Investor Relations webpages." *Id.* ¶ 112. The earnings call consisted of both a written and visual portion, and by incorporating by reference the call, Plaintiff incorporated the entirety of the call—not just Plaintiff's cherry-picked oral snippets. Moreover, Defendants cite Exhibit F for the specific risk disclosure that it contains to demonstrate that the PSLRA's safe harbor applies to several of the challenged statements. Br. at 5, 28. That risk disclosure was incorporated by reference in Exhibit K, the call transcript:

> As shown on Slide 2, the information set forth in the presentation and discussed during this call contains statements about expected future events and financial results that are forward-looking and subject to risks and uncertainties. Please review the safe harbor paragraphs in our press releases and the extended version included in our SEC filings.

Ex. K at 4. And, as explained below, *infra* at 6–7, in securities cases, courts routinely consider risk disclosures incorporated by reference to determine whether or not the safe harbor applies.

Plaintiff also asks the Court to strike **Exhibits G, J, and L**, which are the earnings releases accompanying the May 6, 2022, August 5, 2022, and November 4, 2022 earnings calls, filed with the SEC at the time the challenged disclosures were made. These documents are judicially noticeable, and Plaintiff does not make any argument to the contrary. *See supra* at 3; Mot. to Strike at 11 n.6, *passim*. Plaintiff's Complaint makes numerous allegations about the Company's subscriber results, and the ability of the Promotion to improve those results, such as Plaintiff's argument that Defendants "misrepresent[ed] that UScelluar was using a disciplined approach to promotions that was striking a balance between subscriber results and financial results." *See, e.g.*, Am. Compl. ¶ 111; *see also id.* ¶¶ 122–23, 184 (citing Ex. L). These exhibits

show the Class Period disclosure of subscriber results, including churn, gross additions, and net losses. Br. at 6–7, 10. Such disclosures, provided to investors alongside the challenged statements or alleged corrective disclosures, are integral to the context of Plaintiff's claims regarding the "balance" UScellular was striking and the results of the Promotion. *See* Br. at 16–18.

**C.** **Risk Disclosures Expressly Incorporated by Reference in All 2022 Earnings Calls, Including the Earnings Calls Containing the Challenged Statements, Are Judicially Noticeable.**

**Exhibit A** is UScellular's 2021 10-K, filed with the SEC. Exhibit A is judicially noticeable, and Plaintiff does not make any argument to the contrary. *See supra* at 3; Mot. to Strike at 11 n.6. The disclosures in Exhibit A were expressly incorporated into each of the challenged statements, and Defendants use them to invoke the PSLRA's safe harbor. *See* Ex. H at 4 ("Please review the safe harbor paragraphs in our press releases and the extended version in our SEC filings."); Ex. K at 4 (same); Br. at 28.

Plaintiff's effort to strike these risk factor documents is especially puzzling. Courts routinely consider risk disclosures incorporated into challenged statements at the motion to dismiss stage—and with good reason, since it is only by reviewing the actual disclosures that a court can determine whether or not the safe harbor applies. *See, e.g.*, *Allscripts,* 778 F. Supp. 2d at 874–75; *Desai v. Gen. Growth Props., Inc.*, 654 F. Supp. 2d 836, 844–46 (N.D. Ill. 2009). Plaintiff's argument to the contrary simply amounts to disagreement that the risk disclosures were sufficient. *See, e.g.*, Mot. to Strike at 10 (calling the risk factors "generic" and arguing that they are not meaningful). Plaintiff's substantive arguments regarding Defendants' risk disclosures are not a reason to strike the documents—the Court must review the document and decide for itself.

6

D.     **Pre-Class Period Disclosures of Churn Rates and Customer Additions Which Provide Context With Respect To Pre-Class Allegations in the Complaint Are Judicially Noticeable or Subject to Incorporation by Reference.**

Plaintiff makes numerous allegations regarding Defendants' performance prior to the Class Period, including with respect to the Company's reported subscriber results and other disclosures made to investors. *See, e.g.* Am. Compl. ¶ 49 (discussing announcement in June 2020 "following years of postpaid subscriber losses"); *id.* ¶ 57 ("Throughout 2021, UScellular struggled to compete with the Big 3's promotions."); *id.* ¶¶ 57–58 (Following Q4 2021, UScellular "reported an overall increase in [its] postpaid churn rate" and a decline in "net additions of postpaid connections."). Exhibits D and E provide context for these allegations to avoid Plaintiff's misleading cherry-picking of the information provided to investors.

**Exhibit D** is a transcript of the Q4 2021 UScellular earnings call that took place in February 2022 and is incorporated by reference into the Complaint. *See supra* at 2–3. Plaintiff cites the disclosures made on the earnings call (Am. Compl. ¶¶ 57–58), to show the effect of disclosures made immediately prior to the Class Period on investor expectations. *See id.* ¶ 59 ("Accordingly, before the Class Period even began, investors were attuned to the fact that any information affecting the Companies' ability to mitigate postpaid churn and increase customer adds was highly material[.]"). Exhibit D, which is cited twice, shows that prior to the Class Period, Defendants disclosed that "aggressive industry-wide competition increased year-over-year 'voluntary churn,'" (Br. at 4), a pattern of disclosure that continued throughout the Class Period. *See supra* at 5–6. As such, the facts Plaintiff alleges were hidden from investors were, in fact, continuously disclosed. *Cf.* Br. at 16; *Goucher v. Iterum Therapeutics plc*, 648 F. Supp. 3d 962, 972 (N.D. Ill. 2022) ("Plaintiff's position fails because the information alleged to have rendered Defendants' statements false and misleading was either disclosed by Defendants or otherwise publicly available.").

7

Plaintiff also cites Defendant's discussions of "UScellular's regional-testing strategy" in "the first half of 2022," which includes the discussion of that strategy on the February 2022 call. Am. Compl. ¶ 7; *see, e.g.*, Ex. D at 5, 7. According to Plaintiff, UScellular's adoption of a nationwide Promotion demonstrates that, contrary to their public statements, Defendants were displeased with the regional approach and had decided to abandon it. *See* Opp. at 18 ("Therivel deceived investors by representing he was pleased with the regionalization results."); *id.* ("Defendants deviated from the regional promotion structure [UScellular] previously claimed allowed it to effectively compete."). Exhibit D also demonstrates that, far from misrepresenting their opinion of the regional approach and its relation to UScellular's promotions, Defendants disclosed that (1) intense competition was increasing 2021 promotional costs and would likely increase costs in 2022 (Br. at 5), and (2) the regional strategy was a ***testing*** method that did not preclude the adoption of nationwide promotions (*id.* at 6).

**Exhibit E** is UScellular's February 17, 2022 8-K, filed with the SEC. It is judicially noticeable, and Plaintiff does not make any argument to the contrary. *See supra* at 3; Mot. to Strike at 11 n.6. Defendants cite Exhibit E on two pages of their Brief. First, Defendants cite Exhibit E to show the disclosure of "gross post-paid additions of 165,000 and net losses of 12,000, and a churn rate of 1.35%." Br. at 4–5. These disclosures, part of a pattern of disclosure that continued throughout the Class Period, likewise show that the facts Plaintiff alleges were hidden from investors were, in fact, continuously disclosed. *See supra* at 5–6. Second, Defendants cite the Exhibit to show the Company's 2022 guidance (Br. at 11), which, as discussed further below, is central to Plaintiffs' allegations that the Company's statements in August 2022 regarding its ability to maintain its guidance were false or misleading. *See, e.g.*,

Am. Compl. ¶ 16.[4] Plaintiff argues that Defendants "fail to cite [Exhibits A, E, G, I, and J] for a relevant purpose" and that it is improper to use exhibits to "undermine" Plaintiff's allegations. Mot. to Strike at 12–13. Plaintiff is wrong: the actual disclosures, *e.g.*, of struggles with subscriber results, undermine Plaintiffs' allegations (that the Company had problems with churn "unbeknownst" to investors (Opp. at 2)). It is not only proper, but necessary, for the Court to consider this context.

    **E.**    **Post-Class Period Disclosures Relevant to Plaintiff's Allegations that Financial and Subscriber Results Post-Dating the Challenged Statements Render Those Statements Misleading Are Judicially Noticeable.**

**Exhibits N and P** are post-Class Period 8-Ks filed with the SEC. These documents are judicially noticeable. *See supra* at 3. They also are necessary to provide context to Plaintiff's claims that several of the challenged statements are actionable because Defendants, for instance, allegedly knew and failed to disclose that the "Promotion was financially disastrous and incapable of delivering the subscribership and churn improvement that Defendants described (let alone on the timeline represented)." Opp. at 3. This represents an impermissible attempt to plead fraud by hindsight, and the Court may choose simply to reject Plaintiff's conclusory allegations premised on his baseless characterizations of the Promotion's ultimate success. *See* Br. at 2–3, 14 n.5. The Court should not, however, consider Plaintiff's conclusory allegations regarding the Promotion's ultimate success while also declining to consider the results that actually materialized (which, as shown in Exhibit N, met the original 2022 earnings guidance). Similarly, to the extent that the Court determines that churn rates reported months after the challenged statements are relevant, the Court cannot consider Plaintiff's conclusions regarding the

---

[4] Plaintiff also takes issue with the use of Exhibit E (which pre-dates Class Period), which Plaintiff argues could not be used to show that the Company met its earnings guidance post-Class Period. *See* Mot. to Strike at 12 n.8. But Defendants cite Exhibit E to show what the 2022 guidance *was*, a necessary piece of information for showing that the Company met that guidance. Br. at 11.

Company's ultimate ability to improve those results drawing solely from the November 2022 data (that Plaintiff claims shows the Promotion could not lead to improved results), while declining to consider the data that immediately followed (disclosed in Exhibits N and P, showing improved churn). Br. at 11. Exhibits N and P accordingly are relevant documents filed with the SEC.

F.      **Post-Class Period Earnings Call Transcript Used by Plaintiff to Allege Scienter Is Incorporated by Reference.**

**Exhibit O** is a transcript of a May 5, 2023 earnings call incorporated by reference into the Complaint. *See supra* at 2–3. Plaintiff cites this call to allege that "Defendant Therivel … admitted that Defendants knew prior to the launch of UScellular's Free Phone for Anyone Promotion that improvements to churn would take '6 to 9 months' which was far longer than represented during the Class Period." Am. Compl. ¶ 164; *see also* Opp. at 25. To the extent that the Court considers Plaintiff's allegation premised on this statement, the Court must consider the full context in which that statement was made. *See supra* at 4.[5]

G.  **Analyst Reports Cited by Plaintiff Are Incorporated by Reference.**

**Exhibit Q** is a February 2022 analyst report that Plaintiff uses in the Complaint to allege that "investors were attuned to the fact that any information affecting the Companies' ability to mitigate postpaid churn and increase customer adds was highly material to the Companies' financial performance." Am. Compl. ¶ 59. This allegation is central to Plaintiff's claim that the challenged statements mislead investors by failing to fully disclose the "truth" regarding UScellular's challenges with churn and customer additions. *See, e.g.* Opp. at 2. As a document

---

[5] Plaintiff also claims that Exhibits O and P should not be considered because they were created after the initial Complaint was filed. Mot. to Strike at 5 n.4. But Plaintiff's Complaint itself cites Exhibit O, and both exhibits were created before the operative complaint was filed.

referenced in the Complaint and central to Plaintiff's allegations, Exhibit Q is incorporated by reference, and accordingly Defendant's single citation to the report (noting that the report demonstrates that investors were aware of the Company's subscriber result challenges (Br. at 16)) is entirely proper. *See supra* at 2–3; *Fin. Fiduciaries, LLC v. Gannett Co.,* 46 F.4th 654, 663 (7th Cir. 2022) (noting that when adjudicating a motion to dismiss, courts may consider documents that are "(1) referenced in the plaintiff's complaint, (2) concededly authentic, and (3) central to the plaintiff's claim."); *see also In re Midway Games,* 332 F. Supp. 2d at 1155 n.1; *Fryman*, 462 F. Supp. 3d, at 894.

**Exhibit R** is an August 2022 analyst report that Plaintiff uses in the Complaint to allege that the challenged statements "quelled investors' concerns" about subscriber numbers and costs and were, therefore, misleading. Am. Compl. ¶ 121. In fact, the full report makes clear that during the Class Period, investors were aware of customer losses, elevated churn, and a challenging competitive environment—rendering false Plaintiff's allegation that investors were misled about UScellular's performance. Br. at 24. As a document referenced in the Complaint and central to Plaintiff's allegations, Exhibit R is incorporated by reference and Defendant's single citation to the report (noting that the report demonstrates that investors were aware of the "headwind" faced by the Company in August 2022 (Br. at 24)) is permissible. *See supra* at 2–3.

**H.  Documents Filed with the SEC Used for Clarifying Context, Such as to Supply the Definition of Terms Frequently Used in Earnings Calls, Are Judicially Noticeable.**

**Exhibits B, C, and I.** These documents are 10-Q and 10-K Forms filed with the SEC and cited for only the following undisputed points to provide clarification to the Court:

- **"TDS is an approximately 83% owner of UScellular's common shares, and additionally operates other businesses providing a range of broadband, video, and voice communications services to residential, commercial, and wholesale customers." Br. at 4 (Exhibit B).**

- "Defendant UScellular owns, operates, and invests in wireless markets throughout the United States." Br. at 4 (Exhibit C).

- "Gross additions" are "the total number of new connections added during the period, without regard to connections that were terminated during that period." Brief at 6 n.3 (Exhibit I). "Net losses" represent the total number of "connections that were terminated" during the period net of new connections added. *Id.* n.4.

- "UScellular reported total operating expenses of over $4 billion in 2022." Br. at 21 (Exhibit I); *see also* Am. Compl. ¶¶ 195 n.10, 196 (citing Ex. I).

They are judicially noticeable, and Plaintiff does not make any argument to the contrary. *See supra* at 3; Mot. to Strike at 11 n.6, *passim*.

## CONCLUSION

For the foregoing reasons, the Court should deny in full Plaintiff's Motion to Strike.

Date: December 20, 2023

Respectfully submitted,

By: *James W. Ducayet*
James W. Ducayet (ARDC No. 6236997)
jducayet@sidley.com
Elizabeth Y. Austin (ARDC No. 6308514)
laustin@sidley.com
Sidley Austin LLP
One South Dearborn
Chicago, Illinois 60603
(312) 853-7000

***Attorneys for Defendants***

12