**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| HOWARD M. RENSIN, TRUSTEE OF THE RENSIN JOINT TRUST, Individually and On Behalf of All Others Similarly Situated, | |
| Plaintiff, | No. 1:23-cv-02764 |
| v. | Honorable Mary M. Rowland |
| UNITED STATES CELLULAR CORPORATION, LAURENT C. THERIVEL, DOUGLAS W. CHAMBERS, and TELEPHONE AND DATA SYSTEMS, INC., | |
| Defendants. | |

**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF'S MOTION TO STRIKE**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................1

ARGUMENT.................................................................................................................1

    A.    Defendants Concede Their Request For Consideration Of Their Extrinsic Evidence Was Not Accompanied By Any Specific Analysis Or Argument. ........................................1

    B.    The Court Should Strike Exhibits D, E, F, N, and P, Which Are Subject To Neither Incorporation By Reference Nor Judicial Notice. ...........................................................3

        1.    The Court Should Strike Exhibits E, N, and P...........................................................3

        2.    The Court Should Strike Exhibit D. ...........................................................................6

        3.    The Court Should Strike Exhibit F..............................................................................7

    C.    The Court Cannot Take Judicial Notice of Exhibits H, K, M, O, Q, and R or Incorporate Them By Reference for Defendants' Sought Purpose.....................................................8

    D.    Exhibits A, B, C, G, I, J, and L Cannot Be Incorporated By Reference, or Judicially Noticed For The Truth of the Matters Asserted Therein. ...........................................10

    E.    Exhibits S and T Cannot Be Incorporated By Reference For the Purposes That Defendants Offer These Exhibits. ...............................................................................12

CONCLUSION.............................................................................................................13

i

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. United Airlines, Inc.*,
  2023 WL 5721594 (N.D. Ill. Sept. 5, 2023) ...................................................................2, 3

*Baron v. Hyrecar Inc.*,
  2022 WL 17413562 (C.D. Cal. Dec. 5, 2022) .......................................................................9

*Carleton v. Village of Evergreen Park*,
  2020 WL 1888911 (N.D. Ill. April 16, 2020) ........................................................................3

*Casino Queen Marquette, Inc. v. Scientific Games Corp.*,
  2022 WL 1591578 (N.D. Ill. May 19, 2022) .............................................. 7, 9, 10, 13

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*,
  2013 WL 566805 (N.D. Ill. Feb. 13, 2013) ...........................................................................4

*City of Sterling Heights Policy & Fire Ret. Sys. v. Kohl's Corp.*,
  2015 WL 1478565 (E.D. Wisc. Mar. 31, 2015)......................................................................6

*FDIC v. Pantazelos*,
  2013 WL 4734010 (N.D. Ill. Sept. 3, 2013) ........................................................................13

*Fin. Fiduciaries, LLC v. Gannett Co.*,
  46 F.4th 654 (7th Cir. Aug. 22, 2022) .................................................................................13

*Fryman v. Atlas Fin. Holdings, Inc.*,
  462 F. Supp. 3d (N.D. Ill. May 26, 2020).........................................................................2, 3

*Garden City Emps' Ret. Sys. v. Anixter Int'l, Inc.*,
  2011 WL 1303387 (N.D. Ill. Mar. 31, 2011)......................................................................6, 8

*Gas Tech. Inst. v. Rehmat*,
  2006 WL 3743576 (N.D. Ill. Dec. 15, 2006).........................................................................4

*George v. Kraft Foods Glob., Inc.*,
  674 F. Supp. 2d 1031 (N.D. Ill. 2009)................................................................................11

*Goucher v. Iterum Therapeutics PLC*,
  648 F. Supp. 3d 962 (N.D. Ill. Dec. 28, 2022)......................................................................6

*Hanc & Brubaker Holdings v. NXT LVL Services, LLC*,
  2023 WL 1069854 (N.D. Ill. Jan. 27, 2023).......................................................................2, 3

*Hancock v. Sotheby's*,
  2018 WL 6696071 (N.D. Ill. Dec. 20, 2018).............................................................4, 9, 10

*Heifeng Zhizao (Shenzhen) Tech Co. v. P'ships*,
  2024 WL 50373 (N.D. Ill. Jan. 4, 2024)................................................................................6

*Heiner v. Watford*,
  2022 WL 18777077 (D. Colo. Nov. 21, 2022) .......................................................................7

*In re Energy Recovery Inc. Sec. Litig.*,
  2016 WL 324150 (N.D. Cal. Jan. 27, 2016)...........................................................................8

*In re Midway Games, Inc. Secs. Litig.*,
    332 F. Supp. 2d 1152 (N.D. Ill. Aug. 27, 2004) ...............................................................13

*In re Neopharm, Inc. Sec. Litig.*,
    2003 WL 262369 (N.D. Ill. Feb 7, 2003) .........................................................................8

*Katzman v. United States*,
    2012 WL 601771 (N.D. Ill. Feb. 23, 2012) .......................................................................2

*Khoja v. Orexigen*,
    899 F. 3d 988 (9th Cir. Aug. 13, 2018) ............................................................................6

*Martin v. Siciliano*,
    2023 WL 3320428 (N.D. Ill. May 9, 2023).......................................................................3

*Ong ex rel. Ong IRA v. Sears, Roebuck & Co.*,
    388 F. Supp. 2d 871 (N.D. Ill. 2004).................................................................................5

*Patterson v. Respondus, Inc.*,
    593 F. Supp. 3d 783 (N.D. Ill. Mar. 23, 2022)............................................................. 7-8

*Rem Props. v. ExxonMobil Oil Corp.*,
    2023 WL 5152665 (N.D. Ill. Aug. 10, 2023)...............................................................4, 11

*Rock Hemp Corp. v. Dunn*,
    51 F.4th 693 (7th Cir. 2022) .........................................................................................1, 3

*Siguenza v. City of Chicago*,
    2023 WL 6198820 (N.D. Ill. Sept. 22, 2023) ...................................................................7

*United States SEC v. Kameli*,
    2020 WL 2542154 (N.D. Ill. May 19, 2020) ....................................................................9

**Rules**

FED. R. EVID. 201.....................................................................................................................4

iii

## INTRODUCTION[1]

Defendants concede that the Court need look no further than the Complaint to decide the pending dismissal motion. *See* Reply 2 ("the Court does not need to review anything other than the Complaint[.]"). Nevertheless, Defendants now seek to rectify their initial decision to relegate the entire legal basis for attaching approximately 200 pages of extraneous exhibits to a lone footnote devoid of legal analysis specific to each document by purportedly supplying that information in connection with their MTS Opposition papers. Defendants should not be permitted to use their MTS Opposition as an end-round to circumvent the consequences of failing to initially offer any relevant argument. However, even if the Court were inclined to consider Defendants' belated arguments for why their extraneous exhibits should be considered (which it should not), Defendants' supplied reasoning comes up far short of demonstrating that their documents should be judicially noticed or incorporated by reference. Accordingly, as set forth below and in Plaintiff's opening papers, the Court should grant Plaintiff's Motion to Strike.

## ARGUMENT

**A.**     **Defendants Concede Their Request For Consideration Of Their Extrinsic Evidence Was Not Accompanied By Any Specific Analysis Or Argument.**

"Seventh Circuit precedent is clear that perfunctory and undeveloped arguments … are waived." *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 704 (7th Cir. 2022). In their MTS Opposition

---

[1] "¶_" and "¶¶__" refers to the paragraphs in Plaintiff's First Amended Class Action Complaint for Violations of the Federal Securities Laws ("FAC"). ECF No. 32. "Motion to Strike" or "MTS" refers to Plaintiff's Memorandum of Law in Support of Motion to Strike. ECF No. 38. "Motion to Dismiss" refers to Defendants' Motion to Dismiss the First Amended Complaint, and "DB" refers to Defendants' brief in support thereof. ECF Nos. 35-36. "Opposition" or "Opp." refers to Plaintiff's Opposition to Defendants' Motion to Dismiss. ECF No. 40. "Reply" refers to Defendants' Reply in Support of their Motion to Dismiss. ECF No. 44. "Exhibit(s)" refer to Exhibits appended to Defendants' Motion and Reply. *See* ECF Nos. 36-2 to 36-19, 44-2 to 44-3. "MTS Opposition" or "MTS Opp." refers to Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Strike. ECF No. 45. Unless otherwise noted, capitalized terms have the same meaning as in the FAC, all emphasis is added, and all internal quotations and citations are omitted.

1

(in yet another footnote), Defendants concede that their initial "request" for the Court to consider eighteen extraneous exhibits in evaluating the FAC's sufficiency did not identify specific legal bases for ***any*** of the documents which Defendants sought to have the Court consider. *See* MTS Opp. 2 n.2. (acknowledging the one cited case only generally addressed two "legal principles" for "the Court to consider the exhibits"). Defendants tacitly admit they forfeited their argument seeking consideration of the appended Exhibits and as such, should not be permitted to use the MTS Opposition to now argue what they should have in the first instance.[2] *See id*.; DB 4 n.1; *see also Anderson v. United Airlines, Inc.*, 2023 WL 5721594, at * 9 (N.D. Ill. Sept. 5, 2023) (defendants forfeited argument raised "[i]n one sentence" where they did "not explain which [legal] circumstance[] applie[d] in [their] case or why.").

Defendants nevertheless contend that the Court may consider their exhibits because the case law cited in their Motion to Dismiss footnote provides explicit support for ***how*** the court may do so. *See* MTS Opp. 2 n.2. Defendants' cited case law, however, does not stand for the proposition that they may generally invoke the incorporation by reference doctrine or make requests for judicial notice without specifying which doctrine applies to each appended document or why. *See id*. (citing *Fryman v. Atlas Fin. Holdings, Inc.*, 462 F. Supp. 3d 888, 894-95 (N.D. Ill. May 26, 2020)); *cf. Hanc & Brubaker Holdings v. NXT LVL Services, LLC*, 2023 WL 1069854, at *5 (N.D. Ill. Jan. 27, 2023) (though defendants' cited case law recognized there were several ways a doctrine may apply to their case, defendants "forfeited" the argument where "they [made] no effort to

---

[2] As discussed in §E, *infra*, Defendants asked the Court to incorporate two new exhibits by reference in connection with their Reply (Exhibits S and T). *See* Reply 8 n.5. Defendants' request should be rejected because they offered only perfunctory arguments without legal support (*see id*.), and because it is improper to file new documents in connection with a reply. *See Katzman v. United States*, 2012 WL 601771, at *2 (N.D. Ill. Feb. 23, 2012) (declining to consider external documents submitted without affirmative support "under the familiar and oft-cited principle that skeletal, perfunctory and unsupported presentations will not be considered" and because "the request comes in the [r]eply brief and thus is too late.").

explain how any of [those] doctrines might apply in [their] case."). Simply stated, Defendants improperly expect the Court to connect the dots between their purported authority and their sweeping request. Moreover, unlike here, the *Fryman* "[p]laintiffs [did] not contest this Court's consideration of [d]efendants' exhibits[,]" and the Court nevertheless independently declined to consider several Forms 10-Q and a 10-K because it did not rely on them in deciding the motion. 462 F. Supp. 3d at 894 & n.3.

Defendants next contend that the Court must reject Plaintiff's argument that Defendants failed to articulate or substantiate any basis for considering the proffered exhibits (MTS 4-5) because the case law cited in the Motion to Strike concerned "very different circumstances" than present here. *See* MTS Opp. 2 n.2. Not so. In each of Plaintiff's cited cases (MTS 4-5), as is the case here, the moving party presented perfunctory and undeveloped arguments, which were deemed waived (as should be here) because it is neither the Court's nor the responding party's burden to develop those arguments. *See Martin v. Siciliano*, 2023 WL 3320428, at *5 (N.D. Ill. May 9, 2023) (defendants' "perfunctory and undeveloped arguments" were waived because "it is not Plaintiff's obligation … to research and construct the legal arguments open to [d]efendants."); *Rock Hemp Corp.*, 51 F.4th at 704-05 ("thin" arguments raised in two sentences of an opening brief, which failed to explain basis for defendants' request, were waived).[3]

**B.     The Court Should Strike Exhibits D, E, F, N, and P, Which Are Subject To Neither Incorporation By Reference Nor Judicial Notice.**

**1.  The Court Should Strike Exhibits E, N, and P.**

Defendants contend the Court should take judicial notice of Exhibits E, N, and P because they are supposedly "relevant" Forms 8-K filed with the SEC "of which a court may take judicial

---

[3]*Carleton v. Village of Evergreen Park*, 2020 WL 1888911, at *3 (N.D. Ill. April 16, 2020) (cursory, unsupported argument forfeited); *Hanc & Brubaker Holdings*, 2023 WL 1069854, at *5 (same); *Anderson*, 2023 WL 5721594, at *9 (same).

notice."[4] *See* MTS Opp. 3, 8-10. Though SEC filings may **sometimes** qualify for judicial notice, it is impermissible to do so where, as here, the requested facts are subject to reasonable dispute and are offered only to refute the FAC's well-pled allegations. FED. R. EVID. 201; *see Gas Tech. Inst. v. Rehmat*, 2006 WL 3743576, at *15 (N.D. Ill. Dec. 15, 2006) ("Judicial notice is proper when a fact is not subject to reasonable dispute."); *Rem Props. v. ExxonMobil Oil Corp.*, 2023 WL 5152665, at *6 (N.D. Ill. Aug. 10, 2023) ("[T]he purpose for which Defendants seek to introduce these records [to prematurely manufacture and litigate factual disputes regarding plaintiff's allegations] remains beyond the purview of judicial notice at this juncture.").

Defendants submit Exhibits N and P for the sole purpose of improperly arguing that the promotion was not financially disastrous, which it was (*see* Opp. 7-8, 16), and churn and subscribership improved, which did not (and certainly not within the timeframe Defendants represented was "kn[own]" from the Company's trial data). *See* MTS 6; *see also* Opp. 12. Because these are disputed facts and Defendants only request consideration of Exhibits N and P for the truth of the contents therein to marshal evidence in support of their view of the facts, it is inappropriate to judicially notice Exhibits N and P in connection with the Motion to Dismiss. *See City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, 2013 WL 566805, at *12 (N.D. Ill. Feb. 13, 2013) (refusing to judicially notice exhibits submitted for "the truth of … data.").

Defendants cite to Exhibit E for the purposes of "show[ing] what the 2022 guidance was" because said guidance is purportedly "central" to Plaintiff's claim.[5] *See* MTS Opp. at 8, 9 n.4. But the Complaint already includes this guidance and explains how it was revised downward. *See* ¶124.

---

[4] Defendants do not assert that Exhibits E, N, and P are subject to incorporation by reference, and have thus waived this argument. *See* MTS Opp. 3; *Hancock v. Sotheby's*, 2018 WL 6696071, at *7 (N.D. Ill. Dec. 20, 2018) (failure to respond to an argument constitutes wavier).

[5] Defendants also claim that the Court should take judicial notice of Exhibit E because they rely on it in their briefing. *See e.g.*, MTS Opp. 8 ("Defendants cite…"). But this is not a relevant consideration for determining whether to judicially notice a document. *See* MTS at 3-4.

Therefore, as Defendants concede (Reply 2), the Court need look no further than the Complaint to assess the falsity of the Company's statements in August 2022 regarding its ability to maintain guidance. *E.g.*, *compare* ¶117 (representing USM was maintaining expense discipline while launching aggressive promotions while maintaining guidance) *with* ¶95 (according to CW1, not one area met their postpaid churn quotas through 2Q22 and 3Q22) *and* ¶¶124, 137 (revising Adjusted OBIDA and Adjusted EBITDA downward due to, *inter alia*, promotion costs). Defendants also claim that Exhibit E should be judicially noticed because it demonstrates USM had a pattern of disclosing subscriber challenges (MTS Opp. 8-9); however, as discussed in the Motion to Strike, whether Defendants reported net losses and churn rate before the Class Period has nothing to do with Defendants' false statements concerning the results of the Promotion's April 2022 trials or USM's ability to structure the Promotion, using information from those trials, to maintain financial discipline while launching aggressive promotions. MTS at 12-13.

Exhibits E, N, and P are also not relevant to the resolution of the Motion to Dismiss because, contrary to Defendants' assertion (MTS Opp. 8-10, 9 n.4), whether or not subscriber challenges improved months after the "third quarter" and "second half of the [2022]" and guidance was purportedly met after the Class Period has no bearing on whether Therivel's timeline and financial discipline statements were false based on information that he had at the time of those statements. *See* MTS 6-7; Opp. 11-12 ,15-17; *see Ong ex rel. Ong IRA v. Sears, Roebuck & Co.*, 388 F. Supp. 2d 871, 905 (N.D. Ill. 2004) ("[I]t is inappropriate to entertain" arguments that projections "actually came true" "at the pleading stage[.]"). Accordingly, Exhibits E, N, and P should be stricken.

5

### 2. The Court Should Strike Exhibit D.[6]

Contrary to Defendants' claim (*see* MTS Opp. 7), Exhibit D is not a document subject to incorporation by reference because the FAC ***never*** cites this transcript. *See e.g.*, ¶7 (generally referencing "2021 and the first half of 2022"), ¶¶57-58; *City of Sterling Heights Policy & Fire Ret. Sys. v. Kohl's Corp.*, 2015 WL 1478565, at *3 (E.D. Wisc. Mar. 31, 2015) (refusing to incorporate documents where "none of the allegations rely on . . . or [] mention them"). Indeed, the allegations in ¶¶57-58 simply report UScellular's relevant churn rates and net additions from 1Q20 through 4Q21, not the "disclosures made on the earnings call" as Defendants speciously contend.[7] MTS Opp. 7; *Heifeng Zhizao (Shenzhen) Tech Co. v. P'ships*, 2024 WL 50373, at *2 (N.D. Ill. Jan. 4, 2024) ("the incorporation-by-reference doctrine allows courts to consider attachments, but only if the attachment is ***directly mentioned*** in the original claim and is central to the claim."). Exhibit D does not even include the alleged postpaid churn rates from 1Q20 through 3Q21, further belying Defendants' contention. *See Khoja v. Orexigen*, 899 F. 3d 988, 998-99 (9th Cir. Aug. 13, 2018) (warning against overuse of incorporation-by-reference and noting that accepting defendants' facts as "uncontroverted and true" at the pleading stage "can lead to unintended and harmful results" particularly for "SEC fraud matters[.]"). Defendants also only request consideration of Exhibit D for the improper purpose of inserting extraneous facts to refute the FAC's well-pled allegations.

---

[6] Defendants' arguments concerning Exhibit D are nestled under a heading that asserts that certain documents are either "Judicially Noticeable or Subject to Incorporation by Reference." MTS Opp. 7. Defendants, however, do not argue that Exhibit D is judicially noticeable (because it is not), and have thus waived any such arguments on this basis. *See* MTS Opp. 7-8; *see also* §A, *supra*; *Garden City Emps' Ret. Sys. v. Anixter Int'l, Inc.*, 2011 WL 1303387, at *14 (N.D. Ill. Mar. 31, 2011) (earnings call transcripts are not judicially noticeable).

[7] Defendants claim that the alleged misstatements cannot be false because USM disclosed that aggressive competition was increasing voluntary churn. *See* MTS at 7. This is a red herring. Defendants' timeline and financial discipline misstatements were false and misleading because Defendants misrepresented the timeline for USM to see benefits from the Promotion and the extent of those benefits based on the *undisclosed* information gleaned during the April 2022 trials. *Goucher v. Iterum Therapeutics PLC*, 648 F. Supp. 3d 962, 972-73 (N.D. Ill. Dec. 28, 2022), which involved disclosed clinical trial results and publicly available industry standards, is inapposite. *See* MTS at 7.

6

*See Casino Queen Marquette, Inc. v. Scientific Games Corp.,* 2022 WL 1591578, at *5 (N.D. Ill. May 19, 2022) (explaining that it is impermissible to accept a document under the incorporation-by-reference doctrine to contest plaintiff's allegations)*; see also* MTS Opp. 8 (arguing Exhibit D demonstrates that Defendants disclosed that competition would increase costs in 2022 and the regional testing method did not preclude the adoption of nationwide promotions). Accordingly, Exhibit D should be stricken.

### 3. The Court Should Strike Exhibit F.

Exhibit F is not judicially noticeable because it is an earnings presentation that was not filed with the SEC. *See Heiner v. Watford*, 2022 WL 18777077, at *2 (D. Colo. Nov. 21, 2022) (declining to judicially notice a presentation created by a party to the litigation and maintained on their website). Exhibit F also cannot be incorporated by reference because it was not cited in the FAC and certainly cannot be considered central to Plaintiff's allegations. *See* MTS 10; *Casino Queen Marquette, Inc.,* 2022 WL 1591578, at *5 (declining to incorporate exhibits that were not referenced in the complaint nor central to it); *Siguenza v. City of Chicago*, 2023 WL 6198820, at 2 n.2 (N.D. Ill. Sept. 22, 2023) (similar). Without authority, Defendants assert that Plaintiff incorporated the presentation by reference by citing to a transcript of the call that the presentation purportedly accompanied.[8] *See* MTS Opp. 1 (purporting that incorporation by reference doctrine allows courts to incorporate documents never referenced in a pleading if they are "closely related" to a referenced document). Defendants' conclusory assertion is incorrect. *See Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 805 (N.D. Ill. Mar. 23, 2022) ("To be incorporated by

---

[8] Defendants peculiarly invoke an allegation that a recording of the August 5, 2022 earnings call was uploaded to USM's website to support its argument that the Court should incorporate the presentation. MTS Opp. 5. But a recording of a call is not the same as a presentation.

reference, the documents themselves—not just their general category or theme—must be central to the complaint and referred to in it.").

Defendants also assert with sparse reasoning that the presentation must be considered given Plaintiff's quotations from the earnings call transcript (not the presentation). MTS Opp. 5. But Defendants do not cite to anything in the presentation in either their Motion to Dismiss or Reply to suggest that the presentation supplies context for Defendants' statements. *See generally*, DB and Reply. Finally, to the extent the Court is inclined to incorporate Exhibit F by reference (which it should not), Defendants' citation to generic risk disclosures in the presentation are irrelevant because the falsity of Defendants' statements turns on Defendants' misrepresentations concerning the Promotion's timeline and benefits based on the data learned from the April 2022 Trial, not competition and churn generally. *See* MTS 10.

**C.** **The Court Cannot Take Judicial Notice of Exhibits H, K, M, O, Q, and R or Incorporate Them By Reference for Defendants' Sought Purpose.**

Exhibits H, K, M, O, Q, and R are "not subject to judicial notice" because they are earnings call transcripts and analyst reports, "not historical documents, documents contained in the public record, or reports, decisions, and regulations of administrative bodies." *Garden City Emps' Ret. Sys.*, 2011 WL 1303387, at *14-16 (citing *In re Neopharm, Inc. Sec. Litig.*, 2003 WL 262369, at *2-3 (N.D. Ill. Feb 7, 2003)). Though Defendants assert that the Court may judicially notice Exhibits H, K, and M, they offer no explanation and cite no affirmative authority to support their argument. *See* MTS Opp. 4 ("Class Period Earnings Call Transcripts … Are … Judicially Noticeable.").[9] Defendants have therefore forfeited this argument. *See* §A, *supra*.

---

[9] Defendants cite two of Plaintiff's authorities to suggest that those cases make clear earnings call transcripts can be and are frequently considered on a motion to dismiss. *See* MTS Opp. 3. But the circumstances in each case are different than those present here. For instance, in *In re Energy Recovery Inc. Sec. Litig.*, 2016 WL 324150, at *3 (N.D. Cal. Jan. 27, 2016), the court took judicial notice of a transcript proffered by

Moreover, while the Court may consider Exhibits H, K, M, and O through the incorporation by reference doctrine given they contain the alleged false statements and corrective disclosures, it may not consider the documents for the purposes Defendants seek to use them. *See* MTS Opp. 4, 10. Here, Defendants spuriously argue that the Court should incorporate every facet of these exhibits because they purportedly provide necessary context. *See id*. A closer inspection reveals that Defendants ask the Court to impermissibly draw inferences and resolve factual disputes in their favor. *E.g.*, *compare* DB 24 (citing Ex. K and asserting context shows "Therivel also disclosed exactly what 'results' he was 'pleased with'") *with* Opp. 19 n.8 ("Therivel was discussing voluntary churn and the Promotion's early results as a means for why investors could expect to see steady churn improvement … in the second half of the year"); DB 16 (citing Exhibit H to supply their interpretation of the transcripts containing the false statements); *Casino Queen Marquette, Inc.,* 2022 WL 1591578, at \*5. Defendants' own authority acknowledges such attempts are improper at this stage of the litigation. *See* MTS Opp. 4 (citing *United States SEC v. Kameli*, 2020 WL 2542154, at \*25 (N.D. Ill. May 19, 2020) (declining to resolve competing inferences in defendants favor, and noting that it was inappropriate to find the statement not misleading as a matter of law because "reasonable minds may differ as to how investors would have understood defendants' statements")).

In seeking to incorporate Exhibit O by reference,[10] Defendants claim the Court must consider the "full context" of the transcript if it considers Defendants' admission they knew it

---

plaintiff to which defendants did not object. In *Baron v. Hyrecar Inc*., 2022 WL 17413562, at \*5–7 (C.D. Cal. Dec. 5, 2022), the plaintiff made only a conclusory argument suggesting that "the court should largely disregard these exhibits," and the Court only took judicial notice of the transcript for the proffered purpose that defendant "disclosed" certain information to the market, "but not for the truth of factual assertions contained in these Exhibits."

[10] Defendants do not argue that Exhibits O, Q, and R are judicially noticeable, and thus, concede that they are not. *See* MTS Opp. 10-11; *see also Hancock,* 2018 WL 6696071, at \*7.

9

would take 6 to 9 months to see consumer churn benefits. Defendants, however, did not rely on Exhibit O for context concerning Defendants' 6 to 9 month timeline in their Motion to Dismiss. Instead, they offered it to support their improper argument that churn purportedly improved after the Class Period, which is an inappropriate use of the incorporation by reference doctrine. *See e.g.,* DB 11; *see also Casino Queen Marquette, Inc.,* 2022 WL 1591578, at *5. Defendants similarly cite to Exhibit M to suggest that their statements were not false or misleading because they were purportedly seeing improvement in leading churn indicators, which they claim is synonymous with churn improvement (though USM reported its highest churn level for any quarter in six years that quarter).[11] *See* DB 9-11. This is improper and Defendants' attempts to use the incorporation by reference doctrine solely to refute the FAC's well-pled allegations should be rejected.

**D.      Exhibits A, B, C, G, I, J, and L Cannot Be Incorporated By Reference, or Judicially Noticed For The Truth of the Matters Asserted Therein.**

Defendants do not meaningfully (or at all in some cases)[12] contest that Exhibits A, B, C, G, I, J, and L are inappropriate for incorporation by reference. *See* MTS Opp. 5-6, 11-12. For instance, though Defendants state Exhibits G and J may be incorporated by reference *and* are judicially noticeable, they fail to present any arguments to support that these exhibits may be incorporated by reference. *See id.* 4-6. Defendants have waived such arguments. *See* §A, *supra*.

With respect to Exhibits B, C, and I, Defendants request judicial notice to purportedly "provide clarification" to facts already alleged in the FAC which they do not contest. *See* MTS Opp. 11. For instance, Defendants cite Exhibit B to demonstrate that TDS owns approximately

---

[11] Defendants similarly seek incorporation of Exhibits Q and R to suggest their own interpretation of what the analyst reports conveyed to investors. *See* MTS Opp. 10-11. This too is improper, but should the Court consider these documents, it may only do so to observe what analysts stated – not for Defendants' proffered explanation. *See* MTS 14-15; *Casino Queen Marquette, Inc.*, 2022 WL 1591578, at *5.

[12] Defendants do not argue that Exhibits A, B, C, I, and L can be incorporated by reference, and thereby concede that they cannot. *See* MTS Opp. 5-6, 11-12; *see also Hancock,* 2018 WL 6696071, at *7.

83% of UScellular's common shares; however, they do not raise a Section 20(a) argument disputing TDS' control of USM, which renders this document unnecessary to deciding the Motion to Dismiss. *See* DB 35. Defendants similarly cite Exhibit C for the sole purpose of stating USM "owns, operates, and invests in wireless markets throughout the United States." MTS Opp. 12. Defendants do not and cannot credibly assert that the Court need look past the FAC to this document for any reason. *See* ¶44 (describing USM's wireless operating markets in the United States). Though Defendants request consideration of Exhibit I under the guise of providing context, they actually rely on it to improperly undermine the FAC's allegations CW allegations. *See* DB 21 (asserting USM reported over $4 billion in total operating expenses in 2022 and thus, CW1 could not discuss every cost with Chambers); s*ee also* Opp. n.16; *Rem Props.*, 2023 WL 5152665, at *6. These superfluous attempts to insert facts unnecessary to or inappropriate for resolving the Motion to Dismiss should be rejected.

Exhibits A, G, J, and L are likewise irrelevant to the ultimate resolution of the Motion to Dismiss, and therefore, it is not necessary to judicially notice these documents. For instance, the Court need not consider the generic risk warnings concerning competition and general changes in business factors in either Exhibits A[13] or J because, as argued in the Motion to Strike and with respect to Exhibit F, *supra*, the falsity of misstatements in the FAC does not turn on USM's competition or churn rates, generally. However, to the extent the Court is inclined to consider them, it may only do so for purposes of observing what information was communicated to investors, and not for the truth of the matters therein. *See George v. Kraft Foods Glob., Inc.*, 674 F. Supp. 2d 1031, 1044 (N.D. Ill. 2009).

---

[13] Exhibit A is irrelevant for the additional reasons that it predates the Class Period, and Defendants never specifically pointed investors to its risk disclosures, and instead only generally referenced "SEC filings." *See* e.g., Ex. H (May 6, 2022 Earnings Call) ("Please review the safe harbor paragraphs in our press releases and the extended version in our SEC filings.").

11

**E.     Exhibits S and T Cannot Be Incorporated By Reference For the Purposes That Defendants Offer These Exhibits.**

In their Reply, Defendants improperly request for the first time that the Court consider Exhibits S and T– two new exhibits –through the incorporation by reference doctrine. *See* Reply 8 n.5. Neither exhibit is appropriate for incorporation by reference because Defendants only offer them to introduce their own spin on the FAC's allegations, and as such, both should be stricken. For instance, Defendants offer Exhibit S (an earnings call transcript from February 17, 2023) to suggest their own counternarrative of what investors understood from Therivel's August 5, 2022 misstatements. *See* Reply 8 (suggesting the word "hopefully" contained within Exhibit S "confirm[s] that investors had *not* understood the prior [timeline] statements to constitute such an iron-clad assurance"). However, Defendants conveniently ignore the momentous intervening corrective disclosures that Defendants revealed on November 4, 2022 which obviously shook investors' confidence in the firmness of USM's timeline for expected churn benefits. *See e.g.*, ¶189 ("those promotions have hurt the current financial performance, and postpaid customer churn of 1.42% was the highest level for any quarter in about *six years*"). Any apprehension by analysts in February 2023, after Defendants' highly significant corrective disclosures, says absolutely nothing about how much weight investors assigned to the false statements before receiving that news. Nor does it change that Therivel knew and admitted that "based on the testing we've done in our regional trials, we knew it would take about 6 to 9 months to see the consumer churn benefit." ¶164.

Defendants similarly only offer Exhibit T (an earnings call transcript from August 7, 2020) to refute Plaintiff's allegation that Therivel was particularly motivated to mislead investors in the hopes USM's subscriber and in-store traffic challenges would resolve sooner than the Promotion's

April 2022 trial data suggested.[14] *Compare* Opp. at 32 (stakes were particularly high for Therivel, who was hired by USM to combat years of postpaid subscriber losses, and whose focus was to drive "top line" customer and revenue growth through "gross adds and keeping churn down" in the twelve to eighteen months after joining UScellular) *with* Reply at 10 ("There was no such deadline…"); *Casino Queen Marquette, Inc.*, 2022 WL 1591578, at *5.[15] Moreover, Defendants' extraneous arguments based upon Exhibit T do not suggest that Therivel was not particularly motivated to improve gross adds and churn given that he failed to do so by the first quarter of 2022. *See* Opp. 32; ¶¶50-51; *see also FDIC v. Pantazelos*, 2013 WL 4734010, at *4 (N.D. Ill. Sept. 3, 2013) (declining to incorporate documents by reference where defendants submitted them to "merely offer their own interpretation" and further noting that the documents did not contradict plaintiff's allegations). For these reasons and those in n.3, *supra*, the Court should decline to consider Exhibits S and T in resolving the Motion to Dismiss.

## CONCLUSION

For the aforementioned reasons and those raised in the Motion to Strike, the Court should strike the Exhibits appended to Defendants' Motion to Dismiss and Reply as well as all the inferences drawn therefrom, and should not consider them in connection with Defendants' Motion to Dismiss.

---

[14] Defendants' claim that Plaintiff "invented an artificial ticking clock" "for the first time in his Opposition" is belied by the fact that such allegations are plainly included in the Complaint. *Compare* Reply 10 *with* ¶¶49-51. Additionally, Defendants' acknowledgement that the 18-month timeline ended two months before USM conducted the Promotion's regional trial lends further supports to Plaintiff's argument. *See* Reply 11.
[15] Defendants' reliance on *Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654 (7th Cir. Aug. 22, 2022), MTS Opp. 11, is not on point. There, plaintiff challenged the court's consideration of and reliance on an article that "**he** submitted … to the court." *Id.* at 664. Defendants' reliance on *In re Midway Games, Inc. Secs. Litig.*, 332 F. Supp. 2d 1152, 1156 n.1 (N.D. Ill. Aug. 27, 2004) fares no better given the court there conducted no analysis and merely stated "they are referred to therein and central to plaintiffs' claims.").

Dated: January 10, 2024

Respectfully submitted,

*/s/ Carol V. Gilden*

**COHEN MILSTEIN SELLERS & TOLL, PLLC**
Carol V. Gilden (IL Bar: 6185530)
190 South LaSalle Street, Suite 1705
Chicago, Illinois 60603
Tel: (312) 629-3737
Fax: (312) 357-0369
cgilden@cohenmilstein.com

*Liaison Counsel for Plaintiff Howard M. Rensin, Trustee of The Rensin Joint Trust, and the Class*

**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins (admitted *pro hac vice*)
Gregory M. Potrepka (admitted *pro hac vice*)
Morgan M. Embleton (admitted *pro hac vice*)
Nicholas R. Lange (IL Bar: 6318106)
1111 Summer Street, Suite 403
Stamford, Connecticut 06905
Tel: (203) 992-4523
Fax: (212) 363-7171
shopkins@zlk.com
gpotrepka@zlk.com
membleton@zlk.com
nlange@zlk.com

*Lead Counsel for Plaintiff Howard M. Rensin, Trustee of The Rensin Joint Trust, and the Class*

14

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on January 10, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List.

/s/ Carol V. Gilden
Carol V. Gilden

15