**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| HOWARD M. RENSIN, TRUSTEE OF THE RENSIN JOINT TRUST, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES CELLULAR CORPORATION, LAURENT C. THERIVEL, DOUGLAS W. CHAMBERS, and TELEPHONE AND DATA SYSTEMS, INC., <br><br> Defendants. | Case No. 1:23-cv-02764-MMR <br><br> <u>CLASS ACTION</u> <br><br> Honorable Mary M. Rowland |

**<u>LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND AND PROCEDURAL HISTORY .......................................................... 3

THE PROPOSED SETTLEMENT ................................................................................ 6

      A.     The Settlement Terms and Notice Plan ............................................. 6

      B.     The Plan of Allocation .................................................................... 8

ARGUMENT ............................................................................................................. 8

    I.     LEGAL STANDARDS CONCERNING PRELIMINARY APPPROVAL OF CLASS ACTION SETTLEMENTS ............................. 8

    II.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE APPROVED ..................................... 10

      A.     Rule 23(e)(2)(A), and Synfuel Factors 4 and 5: Lead Plaintiff and His Counsel Adequately Represented the Settlement Class ............................................................................................ 10

      B.     Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at Arm's-Length ................................................................................ 12

      C.     The Settlement Provides Adequate Relief, Considering Appropriate Factors ....................................................................... 13

      i.     Rule 23(e)(2)(C)(1) and *Synfuel* Factors 1 and 2: Benefits of the Settlement in Light of the Costs, Risks, and Delay of Trial and Appeal ..................................................................................... 13

      ii.    Rule 23(e)(2)(C)(ii): The Proposed Method of Distributing Relief Is Effective ........................................................................ 16

      iii.   Rule 23(e)(2)(C)(iii): Terms of Proposed Attorneys' Fees ............. 17

      i.     Rule 23(e)(2)(C)(iv): Any Other Agreement Required to Be Identified ................................................................................... 18

      D.     The Settlement Treats All Settlement Class Members Equitably .................................................................................... 18

    III.   THE SETTLEMENT CLASS SHOULD BE PRELIMINARILY CERTIFIED ................................................................................... 19

      A.     The Settlement Class Meets the Requirements of Rule 23(a) ......... 19

      B.     Rule 23(b)(3) – Predominance and Superiority ............................. 21

ii

C.     Rule 23(g) – Class Counsel ........................................................ 22

IV.    THE PROPOSED NOTICE AND FORMS SHOULD BE
APPROVED ...................................................................................... 22

A.    Notice by E-Mail and Publication is Fair, Reasonable, and
Adequate .................................................................................. 22

B.    The Proposed Notice Informs Settlement Class Members of
Their Rights ............................................................................. 23

V.    PROPOSED SETTLEMENT SCHEDULE ............................................. 25

CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

**CASES**

*Air Lines Stewards & Stewardesses Assoc. v. Am. Airlines, Inc.*,
 455 F.2d 101 (7th Cir. 1972)............................................................................24

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
 2011 WL 3290302 (N.D. Ill. July 26, 2011)...................................................10

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
 2012 WL 651727 (N.D.Ill. Feb. 28, 2012) .....................................................12

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997) .................................................................................19, 21

*Baron v. HyreCar Inc.*,
 2024 WL 3504234 (C.D. Cal. July 19, 2024)..................................................17

*Cohen v. E.F. Hutton & Co., Inc.*,
 1988 WL 89437 (N.D. Ill. Aug. 22, 1988) .....................................................23

*Douglas v. W. Union Co.*,
 328 F.R.D. 204, 210 (N.D. Ill. 2018) .............................................................23

*Flood v. Dominguez*,
 270 F.R.D. 413 (N.D. Ind. 2010) ...................................................................19

*Furman v. At Home Stores LLC*,
 2017 WL 1730995 (N.D. Ill. May 1, 2017).....................................................18

*Gautreaux v. Pierce*,
 690 F.2d 616 (7th Cir. 1982)..........................................................................13

*Glickenhaus & Co. v. Household Int'l., Inc.*,
 787 F.3d 408 (7th Cir. 2015)...........................................................................16

*Goldsmith v. Technology Sols. Co.*,
 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995).............................................13, 19

*Gomez v. St. Vincent Health, Inc.*,
 649 F.3d 583 (7th Cir. 2011), *as modified* (Sept. 22, 2011) ............................10

*Great Neck Capital Appreciation Inv. P'ship., L.P. v. PricewaterhouseCoopers, L.L.P.*,
 212 F.R.D. 400 (E.D. Wis. 2002)...................................................................13

*Hale v. State Farm Mut. Auto. Ins. Co.*,
 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018)...............................................10, 11

*Hefler v. Wells Fargo & Co.*,
 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018).................................................15

iv

*Hisps. United of DuPage Cnty. v. Vill. of Addison, Ill.*,
    988 F. Supp. 1130 (N.D. Ill. 1997)..................................................................................12

*In re Bank One Sec. Litig./First Chicago S'holder Claims*,
    2002 WL 989454 (N.D. Ill. May 14, 2002)....................................................................20

*In re Career Educ. Corp. Sec. Litig.*,
    2008 WL 8666579 (N.D. Ill. June 26, 2008)...................................................................17

*In re First Merchs. Acceptance Corp. Sec. Litig.*,
    1998 WL 781118 (N.D. Ill. Nov. 4, 1998)......................................................................15

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998)....................................................................................12

*In re Neopharm, Inc. Sec. Litig.*,
    225 F.R.D. 563 (N.D. Ill. 2004).....................................................................................20

*In re Northfield Labs., Inc. Sec. Litig.*,
    2012 WL 366852 (N.D. Ill. Jan. 31, 2012)........................................................ 11, 21, 24

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006)......................................................................................11

*In re Take Two Interactive Sec. Litig.*,
    2010 WL 11613684 (S.D.N.Y. June 29, 2010)...............................................................24

*In Re: Akorn, Inc. Data Integrity Securities Litigation*,
    No. 18 Civ. 1713 (N.D. Ill. Aug. 26, 2019)...................................................................23

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996)........................................................................................8, 9

*Kalnit v. Eichler*,
    99 F. Supp. 2d 327 (S.D.N.Y.2000), *aff'd*, 264 F.3d 131 (2d Cir. 2001)........................14

*Keele v. Wexler*,
    149 F.3d 589 (7th Cir. 1998).........................................................................................20

*Kelsey v. Allin et al.*,
    No. 14 Civ. 7837 (N.D. Ill. Nov. 16, 2017)...................................................................18

*Lucas v. Vee Pak, Inc.*,
    2017 WL 6733688 (N.D. Ill. Dec. 20, 2017)...............................................................9, 10

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
    256 F.R.D. 586 (N.D. Ill. 2009)....................................................................................20

*McCue v. MB Fin., Inc.*,
    2015 WL 1020348 (N.D. Ill. Mar. 6, 2015)...................................................................12

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012).........................................................................................21

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
    315 F.R.D. 226 (E.D. Mich. 2016)...............................................................................18

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)......................................................................................13

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ..................................................................................................21

*Probst v. Eli Lilly & Co.*,
    2023 WL 11051728 (S.D. Ind. Nov. 21, 2023)..........................................................10

*Roth v. Aon Corp.*,
    238 F.R.D. 603 (N.D. Ill. 2006) ...........................................................................20, 21

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011).........................................................................13

*Shah v. Zimmer Biomet Holdings, Inc.*,
    2020 WL 2570050 (N.D. Ind. May 21, 2020) ..................................................16, 21, 24

*Shah v. Zimmer Biomet Holdings, Inc.*,
    2020 WL 5627171 (N.D. Ind. Sept. 18, 2020)...........................................................16

*Slaughter v. Wells Fargo Advisors, LLC*,
    2017 WL 3124335 (N.D. Ill. Feb. 9, 2017) ...............................................................23

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006)...........................................................................9, 10, 13

*T.K. Through Leshore v. Bytedance Tech. Co., Ltd.*,
    2022 WL 888943 (N.D. Ill. Mar. 25, 2022)...............................................................12

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014).....................................................................................15

**STATUTES**

15 U.S.C. § 78j.......................................................................................................................3, 20

15 U.S.C. § 78t.............................................................................................................................3

**OTHER AUTHORITIES**

*4 Newberg and Rubenstein on Class Actions* § 13:50 (6th ed.) ...................................................12

Edward Flores and Svetlana Starykh, Recent Trends in Securities Class Action
    Litigation, 2024 Full-Year Review (NERA Jan. 22, 2025).............................................16

Laarni Bulan and Eric Tam, Securities Class Action Settlements, 2024 Review &
    Analysis (Cornerstone Research Mar. 26, 2025) ...........................................................16

**RULES**

17 CFR § 240. 10b-5 ..................................................................................................4

Fed. R. Civ. P. 12(b)(6) ........................................................................................4, 16

Fed. R. Civ. P. 23(a) ...........................................................................................passim

Fed. R. Civ. P. 23(b) ...........................................................................................passim

Fed. R. Civ. P. 23(c) ....................................................................................... 27, 28, 30

Fed. R. Civ. P. 23(e) ...........................................................................................passim

Fed. R. Civ. P. 23(g) .................................................................................................27

Fed. R. Civ. P. 26(a)(1) ...............................................................................................6

Fed. R. Civ. P. 9(b) ....................................................................................................4

Lead Plaintiff Howard M. Rensin, Trustee of the Rensin Joint Trust, individually and on behalf of all other members of the proposed Settlement Class, submits this memorandum of law in support of his unopposed motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for entry of the Parties' agreed-upon proposed Preliminary Approval Order.[1] The Settlement Class consists of all persons and entities, similarly situated, other than Defendants, who purchased or otherwise acquired securities of TDS between May 6, 2022 and November 3, 2022, inclusive.[2]

## PRELIMINARY STATEMENT

Following almost two years of highly-contested litigation, Lead Plaintiff agreed to resolve all claims in this Action asserted against Defendants Laurent C. Therivel ("Therivel"), Douglas W. Chambers ("Chambers" and, collectively with Therivel, the "Individual Defendants"), United States Cellular Corporation ("UScellular"), and Telephone and Data Systems, Inc. ("TDS," together with UScellular the "Companies," and the Companies and the Individual Defendants, collectively the "Defendants"), in exchange for an all-cash recovery of $7,750,000.

The Settlement is the result of extensive investigation and arm's-length negotiations among experienced counsel and followed a mediator's proposal by a highly respected mediator, Michelle Yoshida, Esq., of Phillips ADR. The Settlement was reached only after vigorous litigation efforts including investigating potential claims, filing the initial complaint and a robust

---

[1] All capitalized terms not otherwise defined herein have the same meaning as those in the Stipulation of Settlement, dated April 25, 2025 (the "Stipulation" or "Stip." filed herewith as Exhibit 1 to the Declaration of Gregory M. Potrepka ("Potrepka Decl.")). All exhibits ("Ex.") referenced herein are attached to the Potrepka Declaration. The proposed Preliminary Approval Order is submitted herewith and attached as Exhibit A to the Stipulation. Additionally, unless otherwise noted, all emphasis is added, and all internal citations, quotation marks, brackets, ellipses, and footnotes are omitted.

[2] Excluded from the Settlement Class are the Companies and their subsidiaries and affiliates, and their respective officers and directors at all relevant times, and any of their immediate families, legal representatives, heirs, successors, or assigns, and any entity in which any Defendant has or had a controlling interest. Also excluded from the Settlement Class is any Person who would otherwise be a Member of the Settlement Class, but who validly and timely opts out.

1

amended complaint, successfully opposing a motion to dismiss the operative Complaint ("Compl.," ECF No. 32), taking written discovery of Defendants and third parties, attending a full-day mediation, briefing in connection with the mediation, and vigorous subsequent negotiations through the mediator.

Lead Plaintiff's investigation, through Lead Counsel, included review and analysis of, *inter alia*: (i) documents filed publicly by the Companies with the SEC; (ii) publicly available information concerning the Companies and/or the Individual Defendants, including press releases, news articles, conference call transcripts, and video recorded interviews; (iii) research reports issued by financial and industry analysts concerning the Companies and their publicly traded securities; (iv) receipt and review of over 6,300 pages of documents from Defendants and third parties obtained in discovery; (v) interviews conducted of former UScellular employees; (vi) reports prepared by Lead Plaintiff's damages experts in connection with the mediation; (vii) Defendants' submissions and arguments in connection with the mediation; and (viii) the applicable law and pleadings governing the claims and potential defenses in this Action.

Given this extensive investigation, Lead Plaintiff and Lead Counsel were well-informed of the strengths and weaknesses of the claims and the fairness of the Settlement. Lead Plaintiff submits the Settlement should be approved by the Court as it fairly, reasonably, and adequately balances the objective of securing the highest possible monetary recovery for the Settlement Class against the significant risk that it could receive a smaller recovery, or no recovery, if the Action continued. At this time, Lead Plaintiff seeks entry of the Preliminary Approval Order which will start the process for obtaining final approval of the settlement by, among other ways:

1. Preliminarily approving the proposed Settlement as set forth in the Stipulation dated April 25, 2025;

2.        Certifying the proposed Settlement Class for settlement purposes only, and appointing Lead Plaintiff as class representative and Lead Counsel as Settlement Class Counsel, for settlement purposes only;

3.        Approving the retention of Strategic Claims Services ("SCS") as the Claims Administrator;

4.        Approving the proposed form, content, and method of dissemination of the Notice, Claim Form, Postcard Notice, and Summary Notice substantially in the same form as Exs. A-1, A-2, A-3, and A-4 annexed to the Stipulation as the best notice practicable under the circumstances and holding they comply with due process, Rule 23, and the PSLRA;

5.        Setting a schedule for: (i) providing notice to the Settlement Class; (ii) filing of Lead Plaintiff's motion for final approval of the Settlement and Lead Counsel's Fee and Expense Application, inclusive of any requested award to Lead Plaintiff; (iii) permitting Settlement Class members to submit a claim, request to be excluded, or object to any part of the Settlement or Lead Counsel's Fee and Expense Application; and (iv) a date certain for the Settlement Hearing.

## BACKGROUND AND PROCEDURAL HISTORY

### A.  The Initial Complaint, Lead Plaintiff Appointment, and the Operative Complaint

On May 2, 2023, Lead Plaintiff filed the above-captioned putative securities class action in this District, asserting claims under the federal securities laws on behalf of persons and entities who purchased or otherwise acquired securities of TDS between May 6, 2022 and November 3, 2022, inclusive. ECF No. 1 at ¶2. Lead Plaintiff alleges that Defendants made materially false or misleading statements and omissions throughout the Settlement Class Period in violation of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and SEC Rule 10b-5 promulgated thereunder, which caused the price of TDS's publicly traded securities (Nasdaq:

3

$TDS, $TDSPrU, $TDSPrV) to trade at artificially inflated prices.

On July 11, 2023, the Court entered an Order appointing (i) the Rensin Joint Trust as Lead Plaintiff and (ii) Levi & Korsinsky, LLP as Lead Counsel. ECF No. 28. On September 1, 2023, after further investigation, Lead Plaintiff filed his operative First Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint"), asserting securities fraud claims individually and on behalf of all persons and entities that purchased or otherwise acquired public securities of TDS between May 6, 2022 and November 3, 2022, inclusive. ECF No. 32. The Complaint alleges that during the Settlement Class Period, Defendants disseminated false and misleading statements that falsely concealed and misrepresented UScellular's in-store traffic trends, the costs and impact on subscribership of Class Period promotion activity, the expected timeline for promotional benefits, and the Defendants' satisfaction with the Company's regional approach to promotions. *Id.* at ¶¶104-121. Lead Plaintiff further alleges that the truth was revealed on November 3, 2022 and November 4, 2022, when Defendants disclosed, among other items, the Company's financial results for the fiscal quarter ended September 30, 2022, which caused the prices of publicly traded TDS common stock and preferred stock to significantly depreciate, and thereby, caused economic harm to the Settlement Class. *Id.* at ¶¶122-39, 181-91.

**B. Defendants' Motion to Dismiss and the Court's Order Denying the Motion in Part**

On October 16, 2023, Defendants moved to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(6) and 9(b). ECF No. 35. On November 30, 2023, Lead Plaintiff opposed Defendants' motion to dismiss. ECF No. 40. That same day, Lead Plaintiff also filed a motion to strike, a supporting memorandum, and a proposed order, seeking to strike the exhibits filed in support of Defendants' motion to dismiss. ECF Nos. 37-39. On December 20, 2023, Defendants filed a reply brief responding to Lead Plaintiff's opposition to the motion to dismiss and a response

4

in opposition to Lead Plaintiff's motion to strike. ECF Nos. 44-45. On January 10, 2024, Lead Plaintiff filed a reply brief in further support of his motion to strike. ECF No. 47.

On November 1, 2024, the Court issued a Memorandum Opinion and Order denying in part and granting in part the Defendants' motion to dismiss the FAC, and denying Lead Plaintiff's motion to strike. ECF No. 52. In the Order, the Court sustained many of Lead Plaintiff's core allegations in the Complaint, including the alleged misstatements regarding UScellular's promotion timeline, in-store traffic, purported success balancing promotional expenses with subscribership outcomes, and Therivel's satisfaction with the regional approach to promotions.

### C. Discovery and Mediation

On November 13, 2024, the Parties filed a joint status report containing a proposed schedule for fact discovery, expert discovery, dispositive motions, and trial. ECF No. 55. On November 14, 2024, the Court adopted the Parties' proposed schedule. ECF No. 57. Shortly thereafter, the Parties negotiated an Agreed Confidentiality Order and a Stipulated Protocol for Discovery of Electronically Stored Information. ECF Nos. 59, 62.

On November 14, 2024, Lead Plaintiff served Plaintiff's First Set of Requests for Production of Documents on Defendants. Stipulation at 3. In response to these Requests, Defendants have produced, and Lead Plaintiff has reviewed, more than 6,300 pages of documents. *Id.* at 3. On November 15, 2024, Lead Plaintiff served ten duly noticed subpoenas *duces tecum* on third-parties. *Id*. Lead Plaintiff received and reviewed more than 5,000 pages of documents in response to these subpoenas. *Id*. On November 25, 2024, the Parties exchanged initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1). *Id.* at 4. On December 2, 2024, Defendants served Defendants' First Set of Requests for Production of Documents on Plaintiff. *Id*. On December 16, 2024, Defendants served on Lead Plaintiff the Defendants' Responses and

Objections to Plaintiff's First Set of Requests for Production of Documents. *Id.* On January 2, 2025, Lead Plaintiff served written responses and objections to Defendants' discovery requests and produced responsive documents. *Id.*

On February 4, 2025, the Parties attended a full-day, in-person mediation session presided over by Michelle Yoshida, Esq., a well-respected and highly experienced mediator of Phillips ADR Enterprises. *Id.* Prior to the mediation session, the Parties exchanged voluminous briefing and exhibits concerning the Parties' respective views as to disputed issues, including liability, causation, and damages. *Id.* The mediation was unsuccessful. ECF No. 64.

### THE PROPOSED SETTLEMENT

Although the mediation was unsuccessful, the Parties continued to negotiate a possible settlement through Ms. Yoshida over the next several weeks. Stipulation at 4. On February 26, 2025, Ms. Yoshida issued a double-blind mediator's recommendation to resolve all claims, which all Parties subsequently accepted. *Id.* On February 28, 2025, the Parties jointly notified the Court that they had agreed in principle to resolve all issues and claims involved in this Action. ECF No. 66. The Parties subsequently negotiated the Stipulation of Settlement, which sets forth the final terms and conditions of the Settlement, that was executed on April 25, 2025.[3] Stipulation at 38.

#### A. The Settlement Terms and Notice Plan

The proposed Settlement calls for Defendants to make a cash payment of $7,750,000 USD to the Settlement Class, as more fully described in the Stipulation, in return for a release of all

---

[3] The Parties have also entered into a Confidential Supplemental Agreement Regarding Requests for Exclusion, dated as of April 25, 2025. *See* Stipulation, Section V.12.3. The Supplemental Agreement sets forth the conditions under which Defendants may terminate the settlement if requests for exclusion from the Settlement Class exceed an agreed-upon criteria (the "Opt-Out Threshold"). As is standard in securities class actions, such agreements are not made public in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the Opt-Out Threshold to exact an individual settlement. The Supplemental Agreement, Stipulation, and term sheet are the only agreements concerning the Settlement entered into by the Parties.

claims that have been, or could have been, asserted in the Action. Claims explicitly excluded from the release include all shareholder derivative actions that were pending at the time the Stipulation was entered. *See* Stipulation at ¶1.37. The proposed Settlement is not a "claims made" settlement and there are no reversionary funds. *Id.* at ¶4.4.

Lead Plaintiff proposes Strategic Claims Services (the "Claims Administrator" or "SCS"), a nationally recognized class action settlement administrator, be retained, subject to the Court's approval. SCS was chosen after provision of a competitive bid, and because it is well known and highly experienced in the administration of securities fraud class action settlements. Accordingly, Lead Plaintiff respectfully requests that the Court approve his selection.

Notice to the Settlement Class and the cost of settlement administration will be funded by the Settlement Fund. Notice and Administration expenses prior to the Effective Date of the Settlement are not to exceed $200,000 without further order of the Court. Stipulation at ¶6.2. Lead Counsel, through the Claims Administrator, will supervise and administer the notice procedure as well as the processing of claims, as set forth below:

(a)     Not later than 15 business days after the entry of an order granting preliminary approval (the "Notice Date"), the Claims Administrator shall cause a copy of the Postcard Notice, substantially in the same form as Ex. A-3 annexed to the Stipulation, to be e-mailed (or sent by first-class mail where no e-mail address is available) to all Settlement Class Members who can be identified with reasonable effort, and shall cause the Notice and Proof of Claim, substantially in the same form as Exs. A-1 and A-2 annexed to the Stipulation, to be posted on the Settlement website, from which copies of the documents can be downloaded;

(b)     Not later than 10 calendar days after the Notice Date, Lead Counsel or the Claims Administrator shall cause a copy of the Summary Notice, substantially in the same form as Ex.

A-4 annexed to the Stipulation, to be published in a widely-circulated national wire service;

(c) At least 7 calendar days before the Settlement Hearing, Lead Counsel shall file proof with the Court of such mailing and publication.

Furthermore, SCS shall use reasonable efforts to give notice to nominee purchasers such as brokerage firms and other persons and entities that purchased or acquired TDS securities during the Settlement Class Period as record owners but not as beneficial owners, as more fully described in the Notice. *See* Stipulation at ¶1.23; Ex. A-1 at 20.

### B. The Plan of Allocation

Lead Counsel developed the proposed Plan of Allocation with the assistance of an experienced damages expert and it is comparable to the plans of allocation approved in virtually all similar securities class actions. Potrepka Decl., ¶7. The proposed Plan of Allocation distributes the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms on a *pro rata* basis based on the amount of each Authorized Claimant's Recognized Loss. Ex. A-1, at 15-16.  Authorized Claimant's Recognized Losses are based on the "out-of-pocket" measure of damages, which is consistent with the securities fraud claims alleged, as opposed to losses caused by market, industry, or other factors unrelated to the allegations. The Plan of Allocation also takes into consideration when each Authorized Claimant purchased and/or sold securities of TDS, the transaction's price, and requires that securities of TDS be held over the alleged corrective disclosure date for an Authorized Claimant to have a Recognized Loss. Ex. A-1, at 16-17.

## ARGUMENT

### I. LEGAL STANDARDS CONCERNING PRELIMINARY APPPROVAL OF CLASS ACTION SETTLEMENTS

Public policy strongly favors settlements, especially in complex class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class

8

action litigation."). Under Federal Rule of Civil Procedure 23(e), class action claims "may be settled … only with the court's approval." This "two step[]" approval process includes: (i) "a preliminary review to determine whether the proposed settlement is within the range of possible approval[,]" and whether class members should be notified of the proposed settlement and a fairness hearing; and (ii) after preliminary approval and notice, a determination of whether the proposed settlement is "fair, reasonable, and adequate." *Lucas v. Vee Pak, Inc.*, 2017 WL 6733688, at *2 (N.D. Ill. Dec. 20, 2017). Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."

Courts consider the Rule 23(e)(2)(C) factors to determine whether a proposed settlement should be approved as fair, reasonable, and adequate. Those factors include consideration of whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other. The Rule 23(e)(2)(C) factors are not exclusive, and the Seventh Circuit has traditionally also considered other factors which overlap with Rule 23 when evaluating the propriety of a proposed class action settlement:

> In order to evaluate the fairness of a settlement, a district court must consider [1] the strength of plaintiffs' case compared to the amount of defendants' settlement offer, [2] an assessment of the likely complexity, length and expense of the litigation, [3] an evaluation of the amount of opposition to settlement among affected parties, [4] the opinion of competent counsel, and the stage of the proceedings and [5] the amount of discovery completed at the time of settlement.

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (the "*Synfuel* Factors*"); *see also Isby*, 75 F.3d at 1199.[4]

---

[4] *Synfuel* Factor 3, regarding potential opposition to the Settlement Class is only applicable at final approval, after Settlement Class Members have had notice and opportunity to object.

But *preliminary* approval of a proposed class action settlement is just the first step in determining whether a proposed settlement is "fair, reasonable, and adequate" and "[t]he Court may grant preliminary approval of a proposed class action settlement if it is within the range of possible approval." *Lucas*, 2017 WL 6733688, at *8. In other words, "the court's task is … not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards under *Synfuel*." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011); *see also Probst v. Eli Lilly & Co.*, 2023 WL 11051728, at *1 (S.D. Ind. Nov. 21, 2023) ("the court is not conducting a deep, searching investigation" rather the settlement need only be "within the range of possible approval.")

As articulated below, in subsections A – D, the proposed settlement is well within the range of possible approval in light of all relevant factors.

## II. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE APPROVED

### A. Rule 23(e)(2)(A), and Synfuel Factors 4 and 5: Lead Plaintiff and His Counsel Adequately Represented the Settlement Class

When considering the adequacy of representation under Rule 23(e)(2)(A), courts consider "the adequacy of the named plaintiffs as representatives" and of "the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011), *as modified* (Sept. 22, 2011).

**Lead Plaintiff's Adequacy** Lead Plaintiff is an experienced investor and retired attorney who has no interests antagonistic to the Settlement Class and has invested significant time and effort into this litigation, including: communicating with Lead Counsel regarding progress of the litigation and Settlement of the Action; reviewing and authorizing court filings; and producing documents in discovery. *See Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 6606079, at *3 (S.D. Ill. Dec. 16, 2018) (adequate representation where class representatives had "no conflicts of interest" and invested significant time and resources in the litigation). If the Action did not settle,

10

Lead Plaintiff was prepared to sit for a deposition and litigate through trial. Moreover, Lead Plaintiff's interests have been identical to, and aligned with, those of all other Settlement Class members throughout the litigation: to obtain the largest recovery possible. *See In re Northfield Labs., Inc. Sec. Litig.*, 2012 WL 366852, at *3 (N.D. Ill. Jan. 31, 2012) (finding adequacy where lead plaintiffs and class members shared the same interest—obtaining the maximum recovery); *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest"). Thus, the Lead Plaintiff's adequacy as a representative of the Settlement Class supports preliminary approval of the Settlement.

**Lead Counsel's Adequacy** Lead Counsel are highly experienced securities litigation attorneys that have a long, successful track record of representing investors in similar class actions. Potrepka Decl., Ex. 2. Throughout this litigation, Lead Counsel zealously prosecuted Lead Plaintiff's claims. Specifically, Lead Counsel dutifully investigated the Defendants' conduct and filed an initial complaint, filed a motion for the Rensin Joint Trust to be appointed lead plaintiff, carefully prepared and filed an amended complaint, successfully opposed Defendants' hard-fought motion to dismiss, pursued discovery which included obtaining and reviewing more than 5,000 pages of relevant documents from third-parties and more than 6,300 pages from Defendants, attended the mediation and prepared and reviewed extensive pre-mediation briefing, and successfully negotiated and documented the Settlement—all in the face of highly-resourced Defendants and sophisticated defense counsel. Stipulation at 2-4; *see Hale*, 2018 WL 6606079, at *3 (finding counsel adequate where counsel had extensive experience in prosecuting class actions, various complex cases, and the type of claims asserted, and had litigated the case intensively and successfully). Accordingly, Lead Counsel's representation was plainly adequate

11

and their zealous advocacy supports preliminary approval.[5]

**B.        Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at Arm's-Length**

A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between" able counsel "after meaningful discovery." *McCue v. MB Fin., Inc.*, 2015 WL 1020348, at *1 (N.D. Ill. Mar. 6, 2015) (citing *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727, at *10 (N.D.Ill. Feb. 28, 2012)). Moreover, the "best evidence of a truly adversarial bargaining process is the presence of a neutral third-party mediator." *T.K. Through Leshore v. Bytedance Tech. Co., Ltd.,* 2022 WL 888943, at *11 (N.D. Ill. Mar. 25, 2022) (quoting *4 Newberg and Rubenstein on Class Actions* § 13:50 (6th ed.)).

Here, Lead Plaintiff agreed to the proposed Settlement only after being fully informed by Lead Counsel as to the strengths and weaknesses of the case, and after a protracted, arm's-length mediation process that involved a well-respected, neutral mediator and experienced counsel on both sides. Stipulation at 4. Because the proposed Settlement in this case was the result of arm's-length negotiations mediated by a disinterested, well-respected, highly-experienced mediator, the proposed Settlement is presumed to be fair, reasonable, and adequate and is therefore within the range of possible approval. *See McCue*, 2015 WL 1020348, at *1; *see also Hisps. United of DuPage Cnty. v. Vill. of Addison, Ill.*, 988 F. Supp. 1130, 1150 n. 6 (N.D. Ill. 1997) ("A strong initial presumption of fairness attaches to the proposed [class action] settlement when it is shown to be the result of this type [arm's-length negotiations by experienced counsel after engaging in discovery]").

---

[5] Further, it is the Lead Counsel's opinion that the Settlement is an excellent result for the Settlement Class considering the costs, risks, and delay of trial and appeal, and courts generally afford great weight to the opinion of experienced class counsel. *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts have consistently given "great weight . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation").

**C.** **The Settlement Provides Adequate Relief, Considering Appropriate Factors**

Analysis of a proposed settlement's reasonableness "is not susceptible of a mathematical equation yielding a particular sum[,] [r]ather . . . in any case there is a range of reasonableness with respect to a settlement[.]" *Goldsmith v. Technology Sols. Co.*, 1995 WL 17009594, at *5 (N.D. Ill. Oct. 10, 1995) (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) (Friendly, J.)). In determining whether a settlement falls within such range, "the judiciary's role is properly limited to the minimum necessary" to protect the proposed class and the public, but courts "should not substitute their own judgments as to optimal settlement terms for the judgment of the litigants and their counsel." *Gautreaux v. Pierce*, 690 F.2d 616, 638 (7th Cir. 1982). Rule 23(e)(2)(C) tasks courts to consider whether "the relief provided for the class is adequate," taking into account four factors. The Settlement satisfies each such factor, and each related *Synfuel* factor.

**i.** **Rule 23(e)(2)(C)(1) and *Synfuel* Factors 1 and 2: Benefits of the Settlement in Light of the Costs, Risks, and Delay of Trial and Appeal**

There is no question that continued class action litigation is costly, risky, and lengthy. "Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted." *Great Neck Capital Appreciation Inv. P'ship., L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409 (E.D. Wis. 2002). If the Action had continued, Lead Plaintiff faced risks to proving both Defendants' liability and the Settlement Class's full amount of damages. Indeed, Lead Plaintiff still had to achieve class certification, complete complex fact and expert discovery, withstand summary judgment and pre-trial motions, prepare for and obtain a jury verdict, litigate post-trial motions, and withstand lengthy appeals. These hurdles are no small task and would take years. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation").

13

**Merits Risks**: Defendants emphatically deny Lead Plaintiff's claims, including whether the alleged misstatements were materially misleading. For instance, in their motion to dismiss, the Defendants challenged falsity by arguing that Therivel's statements that he was pleased with the regional approach were not false or misleading, despite Lead Plaintiff's allegation that UScellular was abandoning its "regionalization" strategy, because "adoption of a national promotion following a regional trial was an essential part of UScellular's regional approach." ECF No. 36 at 18-19. The Court acknowledged that Defendants had presented a "competing plausible interpretation" but held that on a Rule 12(b)(6) motion the Court draws all reasonable inferences in plaintiff's favor. ECF No. 52 at 20. Although the Court sustained statements like these at the motion to dismiss stage, discovery could have disproved the inferences that the Court drew in Lead Plaintiff's favor at the pleadings stage. Issues of proof are a risk to all litigation, and in securities class actions even more so, as the overwhelming majority of relevant documents and witnesses are controlled by the Defendants. Indeed, Defendants' counsel would undoubtedly attempt to challenge the credibility of the Confidential Witnesses cited in the Complaint at deposition, and there was no guarantee that any other witnesses would testify favorably for Plaintiff.

Further, if litigation continued, Defendants were certain to testify that they did not make the surviving misstatements with an intention to deceive or conceal information, and there can be no assurance Lead Plaintiff could prove the misstatements were made with the requisite scienter. *See, e.g., Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y.2000) ("The element of scienter is often the most difficult and controversial aspect of a securities fraud claim"), *aff'd*, 264 F.3d 131 (2d Cir. 2001). Risks like these militate in favor of settlement, because "it is difficult to predict" how juries will decide difficult issues like these in complex securities class actions. *Hefler v. Wells*

14

*Fargo & Co.*, 2018 WL 6619983, at \*7 (N.D. Cal. Dec. 18, 2018) (acknowledging "difficult[y] in proving scienter" at trial); *see In re First Merchs. Acceptance Corp. Sec. Litig.*, 1998 WL 781118, at \*11 (N.D. Ill. Nov. 4, 1998) (scienter "difficult to prove at trial").

***Class Certification, Causation, and Damages Risks***: At class certification, summary judgment, and trial, Defendants would have undoubtedly argued that the alleged misstatements were not the cause of Lead Plaintiff's losses, and that Settlement Class Members suffered no damages. Loss causation and damages analyses typically require complex economic and statistical assessments by experts, at summary judgment, in pre-trial motions, and at trial, providing multiple opportunities for Defendants to establish that the price declines of TDS' common and preferred stock were caused by factors unrelated to the alleged fraud and no damages had occurred. Even on the best facts, loss causation and damages issues are often an unpredictable, "lengthy and expensive battle of the experts, with the costs of such a battle borne by the class[.]" *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014).

**The Settlement's Substantial Benefits**: The Settlement provides an immediate cash recovery of ***$7,750,000***. This favorable result is well-within reasonableness to warrant preliminary approval. Lead Plaintiff's damages expert estimates that if Lead Plaintiff fully prevailed on his alleged claims at both summary judgment and trial, and if the Court and jury accepted Lead Plaintiff's damages theory (including proof of loss causation, which would be hotly contested) over the entire Settlement Class Period, Lead Plaintiff's ***best case scenario***—the maximum aggregate, theoretical damages—would be approximately $65.2 million in damages for TDS common and preferred stock. Potrepka Decl., ¶6. Under Lead Plaintiff's estimated best-case scenario, assuming a 100% claims take rate and no disaggregation of confounding information, the Settlement represents approximately an 11.9% recovery, which is well within the zone of

reasonableness for a complex securities class action like this one. *See* Ex. 3, at 26 (2024 NERA Report: median settlement for cases between 2015 and 2024 with NERA-defined investor losses between $50 and $99 million was 3.8%); Ex. 4, at 7 (2024 Cornerstone Report: "In 2024, the overall median settlement" was 7.3%); *Shah v. Zimmer Biomet Holdings, Inc.*, 2020 WL 5627171, at \*5 (N.D. Ind. Sept. 18, 2020) (finding an 8% recovery to be a "terrific result for the class" when median settlement for securities class actions of similar size in 2019 was 9.4% and median settlement for all securities class actions in 2019 was 4.8%).

\*\*\*

Trial could be years away in a case of this complexity, and any judgment favorable to the Settlement Class would be the subject of post-trial motions and appeal, which could prolong the case for years with potentially disastrous outcomes for the Settlement Class. *See, e.g., Glickenhaus & Co. v. Household Int'l., Inc.*, 787 F.3d 408 (7th Cir. 2015) (vacating jury verdict of $2.46 billion and remanding for trial after 13 years of litigation). In light of the aforementioned risks, there can be no doubt that the Settlement Amount is well within the range of possible approval, weighing in favor of preliminary approval. *See Shah v. Zimmer Biomet Holdings, Inc.*, 2020 WL 2570050, at \*4 (N.D. Ind. May 21, 2020) ("Any hiccup or win for Defendants along the way would have reduced that total possible amount of recovery"). Because the proposed Settlement provides for immediate, certain recovery and eliminates the risks, delay, and expense of continued litigation, the proposed Settlement is within the range of possible approval.

### ii. Rule 23(e)(2)(C)(ii): The Proposed Method of Distributing Relief Is Effective

Rule 23(e)(2)(C)(ii) requires consideration of the effectiveness of the method of distributing relief. The Settlement, like most securities class action settlements, will be distributed with the assistance of an established and experienced claims administrator, SCS. *See, e.g., In re*

16

*Career Educ. Corp. Sec. Litig.*, 2008 WL 8666579, at *4 (N.D. Ill. June 26, 2008) (approving Strategic Claims Services as the administrator for a securities class action settlement); *Baron v. HyreCar Inc.*, 2024 WL 3504234, at *17 (C.D. Cal. July 19, 2024) (approving SCS as claims administrator, noting that "SCS has extensive experience administering class action settlements").

Strategic Claims Services will employ a well-established securities class action distribution process. Namely, a potential Settlement Class Member will submit, either by mail or online using the Claims Administrator's website, the Court-approved Claim Form that provides simple instructions to claimants concerning the necessary information they must present to process their claims and the deadlines by which they must do so. Based on the trade information provided by claimants, the Claims Administrator will determine each Authorized Claimant's share of the Net Settlement Fund based upon each Authorized Claimant's recognized loss, as defined in the Plan of Allocation included in the Notice, or in such other plan of allocation as the Court may approve. *See* Stipulation at ¶7.2. After the Settlement reaches its Effective Date (*Id.* at ¶1.9) and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants. *Id.* at ¶7.4. If there are un-claimed funds after the initial distribution, the Claims Administrator will make further distributions until it is no longer feasible and economical to do so. Any remaining balance after re-distribution(s), if any, shall be contributed to such entity the Court approves under the *cy pres* doctrine. *Id.* at ¶7.5

### iii. Rule 23(e)(2)(C)(iii): Terms of Proposed Attorneys' Fees

As set forth in the Notice, Lead Counsel intends to seek an award of attorney's fees pursuant to the common fund doctrine of no more than one-third of the Settlement Fund and out-

of-pocket expenses not to exceed $350,000, inclusive of an award to Lead Plaintiff. "Courts routinely hold that one-third of a common fund is an appropriate attorneys' fees award in class action settlement[.]" *Furman v. At Home Stores LLC*, 2017 WL 1730995, at \*4 (N.D. Ill. May 1, 2017) (Rowland, J.) (collecting cases); *Kelsey v. Allin et al.*, No. 14 Civ. 7837, ECF No. 118 (N.D. Ill. Nov. 16, 2017) (Rowland, J.) ("Plaintiff's Counsel and Liaison Counsel are awarded one-third of the Gross Settlement Fund or $1,100,000 as attorneys' fees"). Thus, a fee of up to one-third is well within the range of attorneys' fee awards granted in comparable securities class actions. Further, the Court will decide the reasonableness of Lead Counsel's forthcoming fee and expense application after Settlement Class Members have opportunity to object.

### i. Rule 23(e)(2)(C)(iv): Any Other Agreement Required to Be Identified

The Parties have also entered into a Confidential Supplemental Agreement Regarding Requests for Exclusion, dated April 25, 2025. *See* Stipulation at ¶12.3.[6] The Supplemental Agreement sets forth the conditions under which Defendants may terminate the Settlement if requests for exclusion from the Settlement Class exceed a certain amount (the "Opt-Out Threshold"). As is standard in securities class actions, such agreements are not made public to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the Opt-Out Threshold to exact an individual settlement. *See, e.g., N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 240 (E.D. Mich. 2016). The Supplemental Agreement and the Stipulation are the only agreements concerning the Settlement entered into by the parties.

### D. The Settlement Treats All Settlement Class Members Equitably

The proposed Settlement does not provide preferential treatment to Lead Plaintiff or any

---

[6] This Supplemental Agreement shall remain confidential and not filed with the Court unless a dispute of the terms arises or disclosure is ordered by the Court.

other individuals or groups of individuals in the Settlement Class. Ex. A-1 at 15. Under the Plan of Allocation, which was developed with the assistance of a damages expert, the Claims Administrator will calculate a Recognized Loss for each Authorized Claimant's purchases and/or sales of securities of TDS during the Settlement Class Period for which documentation is provided. *Id.* The Claims Administrator will distribute the Net Settlement Fund to the Authorized Claimants on a *pro rata* basis—*i.e.*, the proportionate share of their Recognized Loss in relation to the Settlement Class's aggregate Recognized Losses. *Id.* Thus, the proposed Settlement treats all Settlement Class Members equitably and is within the range of possible approval. *See Goldsmith*, 1995 WL 17009594, at *7 ("pro rata distribution of proceeds is appropriate").

### III. THE SETTLEMENT CLASS SHOULD BE PRELIMINARILY CERTIFIED

Before granting preliminary approval, the Court must determine if the proposed class can be certified for settlement purposes. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Settlement Class must satisfy the four threshold requirements of Federal Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem*, 521 U.S. at 613. Additionally, the action must be maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3). *Id.* at 614. However, the Court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Id.* at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D). Here, the proposed Settlement Class meets all of the requirements of Rule 23(a) and satisfies the requirements of Rule 23(b)(3).

#### A. The Settlement Class Meets the Requirements of Rule 23(a)

**Numerosity**: A class must be so numerous that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement is usually met if there are more than 40 class members. *See, e.g., Flood v. Dominguez*, 270 F.R.D. 413, 417 (N.D. Ind. 2010); *see also In re*

*Bank One Sec. Litig./First Chicago S'holder Claims*, 2002 WL 989454, at \*3 (N.D. Ill. May 14, 2002) (numerosity met with class "smaller than 30" members) (collecting cases).

Here, numerosity is met because TDS' publicly traded securities were actively traded on the NYSE. During the Class Period, TDS had approximately 105 million shares of common stock issued and outstanding. Compl., ECF No. 32 at ¶209. Although the exact number of class members is not known at this time, there are likely thousands of members. *See In re Neopharm, Inc. Sec. Litig.*, 225 F.R.D. 563, 565 (N.D. Ill. 2004) ("NeoPharm stock trades on NASDAQ and more than 16 million shares are outstanding. It can be reasonably inferred that hundreds, if not thousands, of persons would be included in the proposed class").

**Commonality**: Securities fraud cases brought under Section 10(b) of the Exchange Act, like this one, easily meet the commonality requirement. This element is satisfied by showing "[a] common nucleus of operative fact[,]" which is found where "the defendants have engaged in standardized conduct towards members of the proposed class[.]" *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). Here, common questions of law and fact relating to Lead Plaintiff's Exchange Act claims are plentiful, including whether: (1) Defendants' public statements and representations to the investing public during the Settlement Class Period were materially misleading; (2) Defendants acted with scienter; and (3) the price of TDS' securities were artificially inflated by Defendants' misrepresentations. *See Roth v. Aon Corp.*, 238 F.R.D. 603, 606 (N.D. Ill. 2006) ("commonality requirement is not difficult to meet" in securities class action).

**Typicality**: Typicality is satisfied where, as here, "the named representatives' claims have the same essential characteristics as the claims of the class at large." *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 598 (N.D. Ill. 2009). Lead Plaintiff asserts identical claims, based on identical alleged misrepresentations and omissions, as all Settlement Class Members. Thus,

the requirement of typicality is satisfied. *Roth*, 238 F.R.D. at 606.

**Adequacy**: As explained in Section II.A., *supra*, Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class. There are no conflicts between Lead Plaintiff and the Settlement Class Members, and Lead Plaintiff, with the assistance of experienced, well-qualified counsel, has demonstrated his willingness to "vigorously pursue the litigation" during the nearly two years this case was prosecuted before settlement. *See Zimmer Biomet*, 2020 WL 2570050, at *3 (adequacy met where class representatives lacked conflicts with absent class members and willing to "vigorously" litigate).

### B. Rule 23(b)(3) – Predominance and Superiority

The proposed Settlement Class also satisfies Rule 23(b)(3) because common questions "predominate over any questions affecting only individual members," and a class action is "superior" to any other method of litigation. Fed. R. Civ. P. 23(b)(3).[7] "Predominance is a test readily met in certain cases alleging consumer or securities fraud[.]" *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012). As discussed above, common questions of law and fact—such as whether Defendants made materially false and misleading statements that artificially inflated TDS' stock price—abound. *See In re Northfield Labs.,* 2012 WL 366852, at *4 (elements of securities fraud including misrepresentation, scienter, and loss causation are "subject to common proof").

Further, a class action is superior to any of method of adjudicating the Action. In fact, it may be the only feasible method to do so given the large number of Settlement Class Members. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (noting that "most of the plaintiffs

---

[7] Rule 23(b)(3)(D) considers "whether trial would present intractable management problems[.]" *Amchem*, 521 U.S. at 593. That is "not a consideration when settlement-only certification is requested, for the proposal is that there be no trial." *Id.*

would have no realistic day in court if a class action were not available"). Here, individual Settlement Class Members' claims are too small to be efficiently adjudicated individually, and other Settlement Class Members have not shown any interest in prosecuting their own claims. Moreover, management of the class does not present any significant difficulty. Rather, it is highly desirable to adjudicate the Settlement Class Members' claims in one litigation.

In sum, the proposed Settlement Class meets all the requirements of Rule 23(a) and Rule 23(b)(3), and the Court should certify the Settlement Class for the purposes of settlement only.

### C. Rule 23(g) – Class Counsel

A court that certifies a class must also appoint class counsel. *See* Fed. R. Civ. P. 23(g). Rule 23(g) states that the adequacy of Plaintiff's counsel is determined by four factors: (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Lead Counsel has extensive experience and a stellar reputation in class actions and securities litigation. *See* Potrepka Decl., Ex. 2. Lead Counsel has invested considerable time and resources to adequately litigate this Action on behalf of the Settlement Class and commits to continue to do so.

## IV. THE PROPOSED NOTICE AND FORMS SHOULD BE APPROVED

### A. Notice by E-Mail and Publication is Fair, Reasonable, and Adequate

Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances," and Rule 23(e) directs "notice in a reasonable manner[.]" Fed. R. Civ. P. 23(c)(2)(B); Fed. R. Civ. P. 23(e)(1)(B). Neither Rule 23 nor due process requires receipt of actual notice by all Settlement Class Members; rather, notice should be delivered to the last known addresses of those who can be identified and publication used to notify others. *See*

*Newberg and Rubenstein on Class Actions* § 8:15 *(*6th ed.*)*; *Slaughter v. Wells Fargo Advisors, LLC*, 2017 WL 3124335, at *3 (N.D. Ill. Feb. 9, 2017) (approving mailed notice to last known addresses); *Cohen v. E.F. Hutton & Co., Inc.*, 1988 WL 89437, at *3 (N.D. Ill. Aug. 22, 1988) (same).

As outlined in the proposed Preliminary Approval Order, the proposed Settlement provides for the Postcard Notice (Stipulation Ex. A-3) to be e-mailed (or mailed where no e-mail addresses are available) to all Settlement Class Members who can be identified with reasonable effort, including through records maintained by TDS, brokerage firms, and others who regularly act as nominees for beneficial purchasers of securities. The Postcard Notice will include a direct link to the case specific Settlement website, which contains the long form of the Notice (Stipulation Ex. A-1) and the Claim Form (Stipulation Ex. A-2). Second, Lead Counsel or the Claims Administrator shall cause a copy of the Summary Notice (Stipulation Ex. A-4) to be transmitted over a national wire service. These two proposed methods for providing notice satisfy the requirements of Rule 23, the PSLRA, and due process, and will provide substantial savings for the benefit of the Settlement Class compared to notice programs requiring delivery of the full Notice via USPS. *See Douglas v. W. Union Co.*, 328 F.R.D. 204, 210, 217 (N.D. Ill. 2018) (class notice procedure adequate where claims administrator sent notice via email to class members whose email addresses were available and by direct mail to class members whose mailing addresses were available); *In Re: Akorn, Inc. Data Integrity Securities Litigation*, No. 18 Civ. 1713, ECF No. 132 (N.D. Ill. Aug. 26, 2019) (approving substantially similar notice plan that included notice by mail, website, and publication in a national newswire).

**B.      The Proposed Notice Informs Settlement Class Members of Their Rights**

The proposed Notice must contain all information required by the PSLRA and "fairly

23

apprise" the Settlement Class Members of the Settlement's terms "and of the options open to dissenting class members in connection with the proceedings." *Air Lines Stewards & Stewardesses Assoc. v. Am. Airlines, Inc.*, 455 F.2d 101, 108 (7th Cir. 1972). Pursuant to the PSLRA, the notice must also include an explanation of the plaintiff's recovery. *See In re Take Two Interactive Sec. Litig.*, 2010 WL 11613684, at *12–13 (S.D.N.Y. June 29, 2010) (quoting 15 U.S.C. §§78u-4(a)(7)). Furthermore, the notice must inform "that the court will exclude from the class any member who requests exclusion[,]" and "the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B)(v)-(vii).

The Notice advises Settlement Class Members of: (i) the pendency, nature, and history of the class action; (ii) the definition of the Settlement Class and who is excluded; (iii) the reasons for settling; (iv) the Settlement Amount; (v) the Settlement Class's claims and issues raised in the Action; (vi) the Parties' disagreement over damages and liability; (vii) information regarding Lead Counsel's application for attorneys' fees and expenses; and (viii) the proposed plan of allocation. Ex. A-1 at 1-3, 15-20. The Notice also specifies the date, time and place of the Settlement Hearing, and sets forth the procedures for objecting or requesting exclusion. *Id.* at 11-13.

Accordingly, the proposed form and manner of providing notice to the Settlement Class satisfies due process, Rule 23, and the PSLRA and should be approved. *See, e.g., In re Northfield Labs.*, 2012 WL 366852; *Zimmer Biomet*, 2020 WL 2570050, at *5 (approving similar notice).

*// Continued on next page //*

24

## V. PROPOSED SETTLEMENT SCHEDULE

The Parties respectfully propose the following schedule for the Court's consideration:

| | |
|---|---|
| Deadline for e-mailing or mailing the Notice to Settlement Class Members and posting Notice and Claim Form on the Settlement website (the "Notice Date") | 15 business days after entry of the Preliminary Approval Order |
| Deadline to publish the Summary Notice | 10 calendar days after the Notice Date |
| Deadline for Lead Plaintiff to file papers in support of final approval and for Lead Counsel to file its Fee and Expense Application | 35 calendar days prior to the Settlement Hearing |
| Deadline for submitting objections | 21 calendar days prior to the Settlement Hearing |
| Deadline for requesting exclusion | 21 calendar days prior to the Settlement Hearing |
| Deadline for Lead Plaintiff to file reply papers | 7 calendar days prior to the Settlement Hearing |
| Deadline for submitting Claim Forms | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing | At least 100 calendar days after entry of the Preliminary Approval Order |

## CONCLUSION

Wherefore, Lead Plaintiff requests that the Court: (1) preliminarily approve the proposed Settlement as set forth in the Stipulation; (2) certify the proposed Settlement Class for settlement purposes only, and appoint Lead Plaintiff as class representative and Lead Counsel as Settlement Class Counsel, for settlement purposes only; (3) approve the retention of Strategic Claims Services as the Claims Administrator; (4) approve the proposed form, content, and method of dissemination of the Notice, Claim Form, Postcard Notice, and Summary Notice substantially in the same form as Exs. A-1, A-2, A-3, and A-4 annexed to the Stipulation, as the best notice practicable under the circumstances and complies with due process, Rule 23, and the PSLRA; and (5) set the foregoing proposed schedule.

Dated: April 25, 2025            Respectfully submitted,

/s/ *Carol V. Gilden*

**COHEN MILSTEIN**
**SELLERS & TOLL, PLLC**
Carol V. Gilden (IL Bar: 6185530)
190 South LaSalle Street, Suite 1705
Chicago, Illinois 60603
Tel: (312) 629-3737
Fax: (312) 357-0369
cgilden@cohenmilstein.com

*Liaison Counsel for Lead Plaintiff*
*and the Settlement Class*

**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins (*pro hac vice*)
Gregory M. Potrepka (*pro hac vice*)
Morgan M. Embleton (*pro hac vice*)
David C. Jaynes (*pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
Fax: (212) 363-7171
gpotrepka@zlk.com
shopkins@zlk.com
membleton@zlk.com
djaynes@zlk.com

*Lead Counsel for Lead Plaintiff*
*and the Settlement Class*

26