**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| HOWARD M. RENSIN, TRUSTEE OF THE RENSIN JOINT TRUST, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES CELLULAR CORPORATION, LAURENT C. THERIVEL, DOUGLAS W. CHAMBERS, and TELEPHONE AND DATA SYSTEMS, INC.,<br><br>Defendants. | Case No. 1:23-cv-02764-MMR<br><br>CLASS ACTION<br><br>Honorable Mary M. Rowland |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW**
**IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL**
**OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND OF THE LITIGATION ............................ 3

ARGUMENT ............................................................................................................... 3

    I.     THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL .............. 3

          A.     Rule 23(e)(2)(A), and *Synfuel* Factors 4 and 5: Lead Plaintiff and His Counsel Adequately Represented the Settlement Class ....................... 4

          B.     Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at Arm's-Length ...................................................................................... 5

          C.     The Settlement Provides Adequate Relief, Considering Appropriate Factors ...................................................................................... 6

               i.     Rule 23(e)(2)(C)(i) and *Synfuel* Factors 1 and 2: Benefits of the Settlement in Light of the Costs, Risks, and Delay of Trial and Appeal ........................................................................... 7

               ii.    Rule 23(e)(2)(C)(ii): The Proposed Method of Distributing Relief Is Effective ........................................................................ 10

               iii.   Rule 23(e)(2)(C)(iii): Terms of Proposed Attorneys' Fees.......... 11

               iv.   Rule 23(e)(2)(C)(iv): Any Other Agreement Required to Be Identified .................................................................................. 12

          D.     Rule 23(e)(2)(D) and *Synfuel* Factor 3: The Settlement Treats All Settlement Class Members Equitably and No Class Member Has Objected .................................................................................. 12

    II.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE....................... 13

    III.   THE SETTLEMENT CLASS SHOULD REMAIN CERTIFIED ...................... 13

    IV.   THE NOTICE PROGRAM SATISFIED RULE 23 AND DUE PROCESS........ 14

CONCLUSION............................................................................................................ 15

## TABLE OF AUTHORITIES

**CASES**

*Air Lines Stewards & Stewardesses Assoc. v. Am. Airlines, Inc.*,
455 F.2d 101 (7th Cir. 1972) ................................................................................ 15

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
2012 WL 651727 (N.D.Ill. Feb. 28, 2012) ............................................................. 6

*Baron v. HyreCar Inc.*,
2024 WL 3504234 (C.D. Cal. July 19, 2024)........................................................ 10

*Burnett v. Conseco Life Ins. Co.*,
2021 WL 119205, (S.D. Ind. Jan. 13, 2021)........................................................ 4, 6

*Celeste v. Intrusion Inc.*,
2022 WL 17736350, (E.D. Tex. Dec. 16, 2022)...................................................... 5

*Ciarciello v. Bioventus Inc.*,
760 F. Supp. 3d 377 (M.D.N.C. 2024) ............................................................ 10, 11

*Cohen v. E.F. Hutton & Co., Inc.*,
1988 WL 89437 (N.D. Ill. Aug. 22, 1988) ........................................................... 14

*Douglas v. W. Union Co.*,
328 F.R.D. 204, 210 (N.D. Ill. 2018)................................................................... 14

*Furman v. At Home Stores LLC*,
2017 WL 1730995 (N.D. Ill. May 1, 2017) .......................................................... 11

*Gautreaux v. Pierce*,
690 F.2d 616 (7th Cir. 1982) ................................................................................ 7

*Glickenhaus & Co. v. Household Int'l., Inc.*,
787 F.3d 408 (7th Cir. 2015) .............................................................................. 10

*Goldsmith v. Technology Sols. Co.*,
1995 WL 17009594 (N.D. Ill. Oct. 10, 1995)................................................... 7, 12

*Gomez v. St. Vincent Health, Inc.*,
649 F.3d 583 (7th Cir. 2011), *as modified* (Sept. 22, 2011) ............................... 4

*Great Neck Capital Appreciation Inv. P'ship., L.P. v. PricewaterhouseCoopers,
L.L.P.*,
212 F.R.D. 400 (E.D. Wis. 2002) ..................................................................... 7, 13

*Hale v. State Farm Mut. Auto. Ins. Co.*,
2018 WL 6606079 (S.D. Ill. Dec. 16, 2018)................................................... 4, 5, 6

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)........................................................ 8

iii

*In re Career Educ. Corp. Sec. Litig.*,
    2008 WL 8666579 (N.D. Ill. June 26, 2008) ...................................................................... 10

*In re First Merchs. Acceptance Corp. Sec. Litig.*,
    1998 WL 781118 (N.D. Ill. Nov. 4, 1998) ........................................................................... 8

*In re ImmunityBio, Inc. Sec. Litig.*,
    2025 WL 1686263, (S.D. Cal. June 16, 2025) ............................................................... 9, 11

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ......................................................................................... 6

*In re Northfield Lab'ys, Inc. Sec. Litig.*,
    2012 WL 366852 (N.D. Ill. Jan. 31, 2012) ....................................................................... 15

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) .......................................................................................... 5

*In re: Akorn, Inc. Data Integrity Securities Litigation*,
    No. 18 Civ. 1713 (N.D. Ill. Aug. 26, 2019) ..................................................................... 14

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) .......................................................................................... 3, 4

*Kalnit v. Eichler*,
    99 F. Supp. 2d 327 (S.D.N.Y.2000), *aff'd*, 264 F.3d 131 (2d Cir. 2001) .......................... 8

*Kelsey v. Allin et al.*,
    No. 14 Civ. 7837 (N.D. Ill. Nov. 16, 2017) ..................................................................... 11

*Lucas v. Vee Pak, Inc.*,
    2017 WL 6733688 (N.D. Ill. Dec. 20, 2017) ..................................................................... 3

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
    315 F.R.D. 226 (E.D. Mich. 2016) ................................................................................... 12

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................................................. 7

*Shah v. Zimmer Biomet Holdings, Inc.*,
    2020 WL 2570050 (N.D. Ind. May 21, 2020) ............................................................. 10, 15

*Shah v. Zimmer Biomet Holdings, Inc.*,
    2020 WL 5627171 (N.D. Ind. Sept. 18, 2020) ............................................................. 9, 13

*Slaughter v. Wells Fargo Advisors, LLC*,
    2017 WL 3124335 (N.D. Ill. Feb. 9, 2017) ...................................................................... 14

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) .......................................................................................... 4, 7

*T.K. Through Leshore v. Bytedance Tech. Co., Ltd.*,
    2022 WL 888943 (N.D. Ill. Mar. 25, 2022) ....................................................................... 6

iv

*Todd v. STARR Surgical Co.*,
    2017 WL 4877417, (C.D. Cal. Oct. 24, 2017) ........................................................................ 6

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) ............................................................................................ 9

## OTHER AUTHORITIES

Edward Flores and Svetlana Starykh, Recent Trends in Securities Class Action
    Litigation, 2024 Full-Year Review (NERA Jan. 22, 2025) ................................................. 9

Laarni Bulan and Eric Tam, Securities Class Action Settlements, 2024 Review &
    Analysis (Cornerstone Research Mar. 26, 2025) ................................................................. 9

## RULES

Fed. R. Civ. P. 23(c) .................................................................................................... 14, 15

Lead Plaintiff Howard M. Rensin, Trustee of the Rensin Joint Trust, individually and on behalf of all other members of the Settlement Class,[1] submits this memorandum of law in support of his unopposed motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for final approval of (1) the proposed Settlement resolving this Action for the payment of $7.75 million in cash for the benefit of the Settlement Class in consideration for fully resolving all claims alleged in this Action, and (2) the proposed Plan of Allocation of the proceeds of the Settlement.

### PRELIMINARY STATEMENT

Following almost two years of highly-contested litigation, Lead Plaintiff agreed to resolve all claims in this Action asserted against the Defendants in exchange for an all-cash payment of $7,750,000, which has been deposited into an escrow account and is earning interest for the benefit of the Settlement Class. This Settlement is an excellent result for the Settlement Class and is both substantively and procedurally fair, adequate, and reasonable.

Substantively, the Settlement represents a recovery of 11.9% of the **_potential maximum_** recoverable damages related to the pending claims. ¶55. As set forth below, such a recovery surpasses settlement amounts in securities class actions that were approved in this District and elsewhere, as well as median recoveries for all securities class actions between January 2015 and December 2024. *Id*. Moreover, the Settlement avoids considerable risks of a lesser recovery, or a judgment in favor of Defendants, if litigation continued. For this reason, and as further discussed

---

[1] All capitalized terms not otherwise defined herein have the same meaning as those in the Stipulation of Settlement, dated April 25, 2025 (the "Stipulation") (ECF No. 74-1). Unless otherwise indicated: all emphasis is added; all internal citations, brackets, ellipses, footnotes, and quotations are omitted; all references herein to "¶_" are to paragraphs of the Declaration of Gregory M. Potrepka in Support of (I) Lead Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (II) Lead Counsel's Motion For an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Award to Lead Plaintiff, dated July 30, 2025 ("Potrepka Declaration" or "Decl."), filed herewith; and all references to "Ex.__" are to exhibits to the Declaration.

herein and in the Potrepka Declaration, the Settlement is substantively fair.

The Settlement process was also fair. The Settlement was the result of extensive investigation and arm's-length negotiations among experienced counsel and was proposed by a highly respected mediator, Michelle Yoshida, Esq., of Phillips ADR Enterprises. ¶¶37-38. There was no collusion between Lead Plaintiff and the Defendants and the Settlement was reached only after vigorous litigation efforts including investigating potential claims, filing the initial complaint and a robust amended complaint, successfully opposing a motion to dismiss the operative Complaint, taking written discovery of Defendants and third parties, attending a full-day mediation, briefing in connection with the mediation, and vigorous subsequent negotiations through the mediator. ¶¶8, 12-39, 79. Thus, Lead Plaintiff and Lead Counsel were well-informed of the strengths and weaknesses of the Parties' claims and defenses and concluded that the Settlement fairly, reasonably, and adequately balances the objective of securing the highest possible monetary recovery for the Settlement Class against the significant risks at class certification, summary judgment, trial, and any potential appeal. ¶¶9, 43-57. Moreover, to date, no Settlement Class Member has objected to or asked to be excluded from the Settlement.[2] Given these considerations and other factors discussed below, Lead Plaintiff respectfully submits that the proposed Settlement is fair, reasonable, and adequate and warrants final approval by the Court.

Additionally, Lead Plaintiff requests the Court approve the Plan of Allocation, which was disseminated to Settlement Class Members in the Notice via the Settlement website, and hyperlinked in the Postcard Notice. ¶¶58-65, 70, 75. Lead Counsel, in conjunction with an expert damages consultant, designed the Plan of Allocation to distribute the proceeds of the Net

---

[2] The deadline to object to or request exclusion from the Settlement is August 13, 2025. Lead Plaintiff will address any requests for exclusion or objections in his reply papers, due August 27, 2025.

Settlement Fund fairly and equitably to Settlement Class Members. ¶¶72-74. The proposed Plan does not favor particular Settlement Class Members; rather, the *pro rata* distribution method treats all Settlement Class Members—including Lead Plaintiff—similarly. ¶75; *see* Ex. 1-A (Notice), at 11-15. Thus, the Plan of Allocation is fair and reasonable and should be approved.

### FACTUAL AND PROCEDURAL BACKGROUND OF THE LITIGATION

Lead Plaintiff respectfully refers the Court to the accompanying Declaration of Gregory M. Potrepka in Support of (I) Lead Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (II) Lead Counsel's Motion For an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Award to Lead Plaintiff, dated July 30, 2025, for a detailed discussion of, *inter alia*, the factual and procedural background of the Action, the nature of the claims asserted, the extensive efforts undertaken by Lead Counsel during the litigation, the risks of continued litigation, negotiations facilitated through an independent mediator that led to the Settlement, and a summary of the material terms of the Settlement and the Plan of Allocation.

### ARGUMENT

### I. THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

Public policy strongly favors settlements, especially in complex class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Federal Rule of Civil Procedure 23(e) permits a class settlement after a court finds the proposed settlement is "lawful, fair, reasonable, and adequate." *Id.* To determine this, courts consider whether: (A) the class representatives and class counsel provided adequate representation; (B) the proposal was negotiated at arm's-length; (C) the proposed relief is adequate; and (D) the proposal treats class members equitably to each other. FED. R. CIV. P. 23(e)(2). The Seventh Circuit also considers factors which overlap with Rule 23:

3

[1] the strength of plaintiffs' case compared to the amount of defendants' settlement offer, [2] an assessment of the likely complexity, length and expense of the litigation, [3] an evaluation of the amount of opposition to settlement among affected parties, [4] the opinion of competent counsel, and the stage of the proceedings and [5] the amount of discovery completed at the time of settlement.

*Synfuel Techs., Inc., v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (the "*Synfuel* Factors*"); *see also Isby*, 75 F.3d at 1199. As articulated below, in subsections A – D, the proposed settlement is fair, reasonable, and adequate in light of all relevant factors.

> **A.** **Rule 23(e)(2)(A), and *Synfuel* Factors 4 and 5: Lead Plaintiff and His Counsel Adequately Represented the Settlement Class**

When considering the adequacy of representation under Rule 23(e)(2)(A), courts consider "the adequacy of the named plaintiffs as representatives" and of "the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011), *as modified* (Sept. 22, 2011).

**Lead Plaintiff's Adequacy** Lead Plaintiff is an experienced investor and retired litigator who has no interests antagonistic to the Settlement Class and has invested significant time and effort into this litigation, including: communicating with Lead Counsel regarding progress of the litigation and Settlement of the Action; reviewing and authorizing court filings; and producing documents in discovery. Ex. 2 (Rensin Decl.), ¶¶2-3, 6-7; *see Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 6606079, at *3 (S.D. Ill. Dec. 16, 2018) (adequate representation where class representatives had "no conflicts of interest" and had invested significant time and resources in the litigation). If the Action did not settle, Lead Plaintiff was prepared to sit for a deposition and litigate through trial. Ex. 2 (Rensin Decl.), ¶8. Moreover, Lead Plaintiff's interests have been identical to, and aligned with all other Settlement Class members throughout the litigation: to obtain the largest recovery possible. *Id.* at ¶9; *see Burnett v. Conseco Life Ins. Co.*, 2021 WL 119205, at *6 (S.D. Ind. Jan. 13, 2021) (finding adequacy of representation supported final approval where lead plaintiffs and class members shared the same interest—obtaining the

4

maximum recovery); *Celeste v. Intrusion Inc.*, 2022 WL 17736350, at *3 (E.D. Tex. Dec. 16, 2022) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest"); *id.* (securities lead plaintiff who communicated with counsel regarding settlement provided adequate representation). Thus, Lead Plaintiff's adequate representation of the Settlement Class supports final approval.

**Lead Counsel's Adequacy** Lead Counsel are highly experienced securities litigation attorneys that have a long, successful track record of representing investors in similar class actions. ¶¶89-90; Ex. 4 (Firm Resume). Throughout this litigation, Lead Counsel zealously prosecuted Lead Plaintiff's claims. Specifically, Lead Counsel dutifully investigated the Defendants' conduct and filed an initial complaint, filed a motion for the Rensin Joint Trust to be appointed lead plaintiff, carefully prepared and filed an amended complaint, successfully opposed Defendants' hard-fought motion to dismiss, pursued discovery which included obtaining and reviewing more than 5,000 pages of relevant documents from third-parties and more than 6,300 pages from Defendants, attended the mediation and prepared and reviewed extensive pre-mediation briefing, and successfully negotiated and documented the Settlement—all in the face of highly-resourced Defendants and sophisticated defense counsel. ¶¶8, 79, 91; *see Hale*, 2018 WL 6606079, at *3 (finding counsel adequate where counsel had extensive experience in prosecuting class actions, various complex cases, and the type of claims asserted, and had litigated the case intensively and successfully). Accordingly, Lead Counsel's representation was plainly adequate and their zealous advocacy supports final approval.

**B. Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at Arm's-Length**

A "presumption of fairness" may attach to a class settlement reached at "arm's-length" between able counsel "after meaningful discovery[.]" *Am. Int'l Grp., Inc. v. ACE INA Holdings,*

*Inc.*, 2012 WL 651727, at \*10 (N.D. Ill. Feb. 28, 2012). Moreover, the "best evidence of a truly adversarial bargaining process is the presence of a neutral third-party mediator." *T.K. Through Leshore v. Bytedance Tech. Co., Ltd.,* 2022 WL 888943, at \*11 (N.D. Ill. Mar. 25, 2022).

Here, Lead Plaintiff agreed to the proposed Settlement only after being fully informed by Lead Counsel as to the strengths and weaknesses of the case, and after a protracted, arm's-length mediation process that involved a well-respected, neutral mediator and experienced counsel on both sides. ¶¶8-9. Lead Counsel fully supports the Settlement and was well-informed as to its reasonableness given their thorough investigation, the formal discovery taken, the Parties' exchanges at mediation, and counsel's consultation with experts. *Id.* at ¶¶8-9, 79; *see also Burnett*, 2021 WL 119205, at \*10 ("Courts are entitled to rely heavily on the opinion of competent counsel"); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts give "great weight" to "the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation"). Further, the proposed Settlement resulted from arm's-length negotiations mediated by a disinterested, highly-experienced mediator, which strongly supports its fairness. *See Hale*, 2018 WL 6606079, at \*3 (settlement was not collusive where the settlement agreement was "negotiated in good faith at arms' length between experienced attorneys familiar with the legal and factual issues of this case, and overseen by experienced" mediators); *see also Todd v. STARR Surgical Co.*, 2017 WL 4877417, \*2 (C.D. Cal. Oct. 24, 2017) (mediation with Ms. Yoshida demonstrated settlement was non-collusive and supported final approval).

**C.     The Settlement Provides Adequate Relief, Considering Appropriate Factors**

A settlement's reasonableness "is not susceptible of a mathematical equation yielding a particular sum[,] [r]ather . . . in any case there is a range of reasonableness with respect to a settlement[.]" *Goldsmith v. Technology Sols. Co.*, 1995 WL 17009594, at \*5 (N.D. Ill. Oct. 10,

6

1995). In analyzing such range, "the judiciary's role is properly limited to the minimum necessary" to protect the proposed class and the public, and courts "should not substitute their own judgments as to optimal settlement terms for the judgment of the litigants and their counsel." *Gautreaux v. Pierce*, 690 F.2d 616, 638 (7th Cir. 1982). Rule 23(e)(2)(C) tasks courts to consider whether "the relief provided for the class is adequate," taking into account four factors. The Settlement satisfies each such factor, and each related *Synfuel* factor.

### i.  Rule 23(e)(2)(C)(i) and *Synfuel* Factors 1 and 2: Benefits of the Settlement in Light of the Costs, Risks, and Delay of Trial and Appeal

There is no question that continued class action litigation is costly, risky, and lengthy. "Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted." *Great Neck Capital Appreciation Inv. P'ship., L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409 (E.D. Wis. 2002). If the Action had continued, Lead Plaintiff faced risks to proving both Defendants' liability and the Settlement Class's full amount of damages. Indeed, Lead Plaintiff still had to achieve class certification, complete complex fact and expert discovery, withstand summary judgment and pre-trial motions, prepare for and obtain a jury verdict, litigate post-trial motions, and withstand lengthy appeals. These hurdles are no small task and would take years. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation").

**Merits Risks**: Defendants emphatically deny Lead Plaintiff's claims, including whether the alleged misstatements were materially misleading. For instance, in their motion to dismiss, the Defendants challenged falsity by arguing that Therivel's statements that he was pleased with the regional approach were not false or misleading, despite Lead Plaintiff's allegation that UScellular was abandoning its "regionalization" strategy, because "adoption of a national

7

promotion following a regional trial was an essential part of UScellular's regional approach." ECF No. 36 at 18-19. The Court acknowledged that Defendants had presented a "competing plausible interpretation" but held that on a Rule 12(b)(6) motion the Court draws all reasonable inferences in plaintiff's favor. ECF No. 52 at 20. Although the Court sustained statements like these at the motion to dismiss stage, discovery could have disproved the inferences that the Court drew in Lead Plaintiff's favor at the pleadings stage. Issues of proof are a risk to all litigation, and in securities class actions even more so, as the overwhelming majority of relevant documents and witnesses are controlled by the Defendants. Defendants' counsel would undoubtedly attempt to challenge the credibility of the Confidential Witnesses cited in the Complaint at deposition, and there was no guarantee that any other witnesses would testify favorably for Plaintiff.

Further, if litigation continued, Defendants were certain to testify that they did not make the surviving misstatements with an intention to deceive or conceal information, and there can be no assurance Lead Plaintiff could prove the misstatements were made with the requisite scienter. *See, e.g., Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) ("The element of scienter is often the most difficult and controversial aspect of a securities fraud claim"), *aff'd*, 264 F.3d 131 (2d Cir. 2001). Risks like these militate in favor of settlement, because "it is difficult to predict" how juries will decide difficult issues like these in complex securities class actions. *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *7 (N.D. Cal. Dec. 18, 2018) (acknowledging "difficult[y] in proving scienter" at trial); *see In re First Merchs. Acceptance Corp. Sec. Litig.*, 1998 WL 781118, at *11 (N.D. Ill. Nov. 4, 1998) (scienter "difficult to prove at trial").

***Class Certification, Causation, and Damages Risks***: At class certification, summary judgment, and trial, Defendants would have undoubtedly argued that the alleged misstatements were not the cause of Lead Plaintiff's losses, and that Settlement Class Members suffered no

damages. Loss causation and damages analyses typically require complex economic and statistical assessments by experts, at summary judgment, in pre-trial motions, and at trial, providing multiple opportunities for Defendants to establish that the price declines of TDS' common and preferred stock were caused by factors unrelated to the alleged fraud and no damages had occurred. Even on the best facts, loss causation and damages issues are often an unpredictable, "lengthy and expensive battle of the experts, with the costs of such a battle borne by the class[.]" *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014).

**The Settlement's Substantial Benefits**: The Settlement provides an immediate cash recovery of *$7,750,000*. ¶42. This result is highly favorable and warrants final approval. Lead Plaintiff's damages expert estimates that if Lead Plaintiff fully prevailed on his alleged claims at both summary judgment and trial, and if the Court and jury accepted Lead Plaintiff's damages theory (including proof of loss causation, which would be hotly contested) over the entire Settlement Class Period, Lead Plaintiff's *best case scenario*—the maximum aggregate, theoretical damages—would be approximately $65.2 million in damages for TDS common and preferred stock. ¶55. Under Lead Plaintiff's estimated best-case scenario, assuming a 100% claims take rate and no disaggregation of confounding information, the Settlement represents approximately an 11.9% recovery—well within the zone of reasonableness for a complex securities class action like this one. *Id.*; *see* Ex. 5, at 26 (2024 NERA Report: median settlement for cases between 2015 and 2024 with NERA-defined investor losses between $50 and $99 million was 3.8%); Ex. 6, at 7 (2024 Cornerstone Report: "In 2024, the overall median settlement" was 7.3%); *Shah v. Zimmer Biomet Holdings, Inc.*, 2020 WL 5627171, at *5 (N.D. Ind. Sept. 18, 2020) (finding an 8% recovery to be a "terrific result for the class"); *In re ImmunityBio, Inc. Sec. Litig.*, 2025 WL 1686263, *8 (S.D. Cal. June 16, 2025) (approving securities class action settlement equaling "over

9

8%" of damages which was "well above the median" recovery); *Ciarciello v. Bioventus Inc.*, 760 F. Supp. 3d 377, 396-97 (M.D.N.C. 2024) (securities class settlement totaling 10.8% of maximum damages approved, as it was "more than double the average recovery" over previous decade).

**In sum**, trial could be years away in a case of this complexity, and any judgment favorable to the Settlement Class would be the subject of post-trial motions and appeal, which could prolong the case for years with potentially disastrous outcomes for the Settlement Class. *See e.g., Glickenhaus & Co. v. Household Int'l., Inc.*, 787 F.3d 408 (7th Cir. 2015) (vacating jury verdict of $2.46 billion and remanding for trial after 13 years of litigation). Thus, in light of the aforementioned risks, and because the proposed Settlement provides for immediate, certain recovery and eliminates the risks, delay, and expense of continued litigation, the Settlement Amount is fair, reasonable, and adequate, weighing in favor of final approval. *See Shah v. Zimmer Biomet Holdings, Inc.*, 2020 WL 2570050, at *4 (N.D. Ind. May 21, 2020) ("Any hiccup or win for Defendants along the way would have reduced that total possible amount of recovery").

        ii.        **Rule 23(e)(2)(C)(ii): The Proposed Method of Distributing Relief Is Effective**

Rule 23(e)(2)(C)(ii) considers the effectiveness of the method of distributing relief. The Settlement, like most securities class action settlements, will be distributed with the assistance of an established and experienced claims administrator, Strategic Claims Services ("SCS"). *See, e.g., In re Career Educ. Corp. Sec. Litig.*, 2008 WL 8666579, at *4 (N.D. Ill. June 26, 2008) (approving SCS as administrator for a securities class action settlement); *Baron v. HyreCar Inc.*, 2024 WL 3504234, at *17 (C.D. Cal. July 19, 2024) (approving SCS as claims administrator, noting that "SCS has extensive experience administering class action settlements").

Strategic Claims Services will employ a distribution process that is well-established in securities class actions, like this one, providing relief to all Settlement Class Members who have

submitted Claim Forms and are entitled to a distribution under the proposed Plan of Allocation. ¶¶10, 71-76. Based on the trade information provided by claimants, the Claims Administrator will determine each Authorized Claimant's share of the Net Settlement Fund based upon each Authorized Claimant's recognized loss, as defined in the Plan of Allocation included in the Notice, or in such other plan of allocation as the Court may approve. ¶75. After the Settlement reaches its Effective Date and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants based on their *pro rata* share. ¶¶10, 75. This well-established method of distributing relief favors final approval. *ImmunityBio, Inc.*, 2025 WL 1686263 at *9-*10. Further, if there are un-claimed funds after the initial distribution, the Claims Administrator will make further distributions until it is no longer feasible and economical to do so. Any remaining balance after re-distribution(s), if any, shall be contributed to such entity the Court approves under the *cy pres* doctrine. ECF No. 74-1, Ex. 1 at ¶7.5; *Ciarciello*, 760 F. Supp. 3d at 399 (approving similar procedures).

### iii. Rule 23(e)(2)(C)(iii): Terms of Proposed Attorneys' Fees

As stated in the Notice, Lead Counsel requests attorneys' fees equaling one-third of the Settlement Fund and out-of-pocket expenses of $126,945.65, inclusive of an award to Lead Plaintiff, plus interest. ¶11. "Courts routinely hold that one-third of a common fund is an appropriate attorneys' fees award in class action settlement[.]" *Furman v. At Home Stores LLC*, 2017 WL 1730995, at *4 (N.D. Ill. May 1, 2017) (Rowland, J.) (collecting cases); *Kelsey v. Allin et al.*, No. 14 Civ. 7837, ECF No. 118 (N.D. Ill. Nov. 16, 2017) (Rowland, J.) ("Plaintiff's Counsel and Liaison Counsel are awarded one-third of the Gross Settlement Fund or $1,100,000 as attorneys' fees"). Notably, approval of the requested attorneys' fees is separate from approval of

11

the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. ECF No. 74-1, Ex. 1 at ¶5.7 Accordingly, and as set forth in the Fee and Expense Application, the reasonableness of Lead Counsel's fee request supports final approval.

### iv. Rule 23(e)(2)(C)(iv): Any Other Agreement Required to Be Identified

The only agreement the Parties entered into concerning the Settlement other than the Stipulation is a Confidential Supplemental Agreement Regarding Requests for Exclusion, dated April 25, 2025. *See* Stipulation at ¶12.3. The Supplemental Agreement sets forth the conditions under which Defendants may terminate the Settlement if requests for exclusion exceed a certain amount (the "Opt-Out Threshold"). As is standard in securities class actions, absent Court order, such agreements are not made public to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the Opt-Out Threshold to exact an individual settlement. *See N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 240 (E.D. Mich. 2016).

### D. Rule 23(e)(2)(D) and *Synfuel* Factor 3: The Settlement Treats All Settlement Class Members Equitably and No Class Member Has Objected

The proposed Settlement does not provide preferential treatment to any claimant. ¶¶73-74; Ex. 1-A, at 11-15. Under the Plan of Allocation, which was developed with the assistance of an experienced damages expert, the Claims Administrator will calculate a Recognized Loss for each Authorized Claimant's purchases and sales of TDS securities during the Settlement Class Period for which documentation is provided. *Id.* The Claims Administrator will distribute the Net Settlement Fund to the Authorized Claimants on a *pro rata* basis—*i.e.*, the proportionate share of their Recognized Loss in relation to the Settlement Class's aggregate Recognized Losses. *Id.* Thus, the proposed Settlement treats all Settlement Class Members equitably. *See Goldsmith*, 1995 WL 17009594, at *7 ("pro rata distribution of proceeds is appropriate").

Moreover, 22,373 potential Settlement Class Members have been notified of the

12

Settlement by emailed or mailed Postcard Notice and, to date, no objection to the proposed Settlement has been received. ¶¶66, 70. Thus, the equitable treatment of all Class Members under the Plan of Allocation, and the complete lack of objections to date, supports final approval.

## II.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Plans of allocation prepared "by competent and experienced counsel" need only have "a reasonable, rational basis in order to be fair and reasonable." *Shah*, 2020 WL 5627171, *6. Here, the Plan of Allocation was developed in consultation with Lead Plaintiff's damages expert and provides for *pro rata* distribution of the Net Settlement Fund among Authorized Claimants based on "Recognized Loss" formulas. ¶¶72-74. These formulas consider the amount of alleged artificial inflation in the prices of TDS securities at various times. ¶72. The Plan of Allocation was fully described in the Notice and, to date, there has been no objection to the proposed plan. *See* Ex. 1-A, at 11-15; ¶¶70, 75. Accordingly, as set forth herein and in the Potrepka Declaration, it is respectfully submitted that the Plan of Allocation is fair, reasonable, and adequate and should be approved, and that the Settlement satisfies the approval criteria set forth in Rule 23(e)(2)(C)(ii). *See* ¶¶9, 76-77; *Great Neck Capital*, 212 F.R.D. at 410 (approving similar plan).

## III.   THE SETTLEMENT CLASS SHOULD REMAIN CERTIFIED

The Court's May 8, 2025 Order (the "Preliminary Approval Order") certified: the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3); Lead Plaintiff as a class representative; and Lead Counsel as class counsel under Fed. R. Civ. P. 23(g). ECF No. 77, ¶4. Because there have been no changes to alter the propriety of class certification, and because no objections have been received to date, Lead Plaintiff respectfully requests that the Court affirm its certification determinations contained in the Preliminary Approval Order.

13

## IV. THE NOTICE PROGRAM SATISFIED RULE 23 AND DUE PROCESS

Federal Rule of Civil Procedure 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances," and Rule 23(e)(1)(B) directs "notice in a reasonable manner[.]" Neither Rule 23 nor due process requires receipt of actual notice by all Settlement Class Members; rather, notice should be delivered to the last known addresses of those who can be identified and publication used to notify others. *See Newberg and Rubenstein on Class Actions* § 8:15 (6th ed.); *Slaughter v. Wells Fargo Advisors, LLC*, 2017 WL 3124335, at *3 (N.D. Ill. Feb. 9, 2017) (approving mailed notice to last known addresses); *Cohen v. E.F. Hutton & Co., Inc.*, 1988 WL 89437, at *3 (N.D. Ill. Aug. 22, 1988) (same).

The Postcard Notice was e-mailed (or mailed where no e-mail addresses were available) to all Settlement Class Members who could be identified with reasonable effort, including through records maintained by TDS, brokerage firms, and others who regularly act as nominees for beneficial purchasers of securities. Ex. 1 (SCS Decl.), ¶¶2-10. In total, 22,373 potential Settlement Class Members were notified of the Settlement by emailed or mailed Postcard Notice. *Id.* at ¶9. The Postcard Notice included a direct link to the case specific Settlement website, which contains the long form Notice and the Claim Form. *Id.* at ¶6. Additionally, a copy of the Summary Notice was transmitted over *GlobeNewswire*, a national wire service. *Id.* at ¶11. The method of providing notice was fair, reasonable, and adequate. *Douglas v. W. Union Co.*, 328 F.R.D. 204, 210, 217 (N.D. Ill. 2018) (class notice procedure adequate where claims administrator sent notice via email to class members whose email addresses were available and by direct mail to class members whose mailing addresses were available); *In re: Akorn, Inc. Data Integrity Securities Litigation*, No. 18 Civ. 1713, ECF No. 132 (N.D. Ill. Aug. 26, 2019) (approving substantially similar notice plan that included notice by mail, website, and publication in a national newswire).

14

The Notice also contained all information required by the PSLRA and "fairly apprise[d]" Settlement Class Members of the Settlement's terms "and of the options open to dissenting class members[.]" *Air Lines Stewards & Stewardesses Assoc. v. Am. Airlines, Inc.*, 455 F.2d 101, 108 (7th Cir. 1972); *see* Ex. 1-A, 7-10. The notice also included an explanation of the plaintiff's recovery. *Id.* at 2; *see In re Northfield Lab'ys, Inc. Sec. Litig.*, 2012 WL 366852, at *7 (N.D. Ill. Jan. 31, 2012) (approving notice that contained substantially similar content). Furthermore, the notice informed that Settlement Class members who do not timely seek exclusion "are bound by the terms of any judgment entered in the Action" Ex. 1-A, 1-2, 7-10, 17; Fed. R. Civ. P. 23(c)(2)(B)(v)-(vii). The Notice advised Settlement Class Members of: (i) the pendency, nature, and history of the class action; (ii) the definition of the Settlement Class and who is excluded; (iii) the reasons for settling; (iv) the Settlement Amount; (v) the Settlement Class's claims and issues raised in the Action; (vi) the Parties' disagreement over damages and liability; (vii) information regarding Lead Counsel's application for attorneys' fees and expenses; and (viii) the proposed plan of allocation. *See* Ex. 1-A. The Notice also specified the date, time and place of the Settlement Hearing, and set forth the procedures for objecting or requesting exclusion. *Id.* at 4, 8. Accordingly, the form and content of the Notice satisfies due process, Rule 23, and the PSLRA and should be approved. *See, e.g., Northfield Lab'ys.*, 2012 WL 366852, at *9 (approving similar notice); *Zimmer Biomet*, 2020 WL 2570050, at *5 (same).

## **CONCLUSION**

Wherefore, Lead Plaintiff requests that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate.[3]

---

[3] A proposed Final Order and Judgment will be submitted with Plaintiff's reply papers on August 27, 2025, after the deadline for objects and requests for exclusion has passed.

15

Dated: July 30, 2025

Respectfully submitted,

*/s/ Carol V. Gilden*

**COHEN MILSTEIN
SELLERS & TOLL, PLLC**
Carol V. Gilden (IL Bar: 6185530)
200 South Wacker Dr., Suite 2375
Chicago, Illinois 60606
Tel: (312) 629-3737
Fax: (312) 357-0369
cgilden@cohenmilstein.com

*Liaison Counsel for Lead Plaintiff
and the Settlement Class*

**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins (*pro hac vice*)
Gregory M. Potrepka (*pro hac vice*)
Morgan M. Embleton (*pro hac vice*)
David C. Jaynes (*pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
Fax: (212) 363-7171
gpotrepka@zlk.com
shopkins@zlk.com
membleton@zlk.com
djaynes@zlk.com

*Lead Counsel for Lead Plaintiff
and the Settlement Class*

16