**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| HOWARD M. RENSIN, TRUSTEE OF THE RENSIN JOINT TRUST, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES CELLULAR CORPORATION, LAURENT C. THERIVEL, DOUGLAS W. CHAMBERS, and TELEPHONE AND DATA SYSTEMS, INC., <br><br> Defendants. | Case No. 1:23-cv-02764-MMR <br><br> <u>CLASS ACTION</u> <br><br> Honorable Mary M. Rowland |

**MEMORANDUM IN SUPPORT OF**
**LEAD COUNSEL'S MOTION FOR AN AWARD OF**
**ATTORNEYS' FEES, REIMBURSEMENT OF**
**LITIGATION EXPENSES, AND AWARD TO LEAD PLAINTIFF**

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ...................................................................... 1

II.   THE REQUESTED ATTORNEYS' FEES ARE FAIR AND REASONABLE ................ 3

      A.    Counsel Is Entitled to an Award of Attorneys' Fees from the Common Fund .................................................................................................... 3

      B.    The Awarded Fee Should Be a Percentage of the Fund ....................................... 3

      C.    The Requested Fee is Fair and Reasonable Under Applicable Seventh Circuit Factors.................................................................................... 4

            1.    Lead Counsel's Request for a One-Third Fee is Squarely in Line With Awards for Class Counsel Representations in Similar Matters ......... 5

            2.    Class Counsel Provided the Settlement Class with Quality Legal Services that Produced Excellent Results .................................... 6

            3.    The Requested Attorneys' Fees are Fair and Reasonable in Light of the Contingent-Fee Nature of the Representation...................................... 8

      D.    Lead Plaintiff Has Approved the Requested Fee ...................................................... 9

      E.    The Reaction of the Settlement Class Supports the Reasonableness of the Fee Request........................................................................................ 9

      F.    Public Policy Supports Granting the Fee Request ................................................. 10

      G.    The Lodestar Method Confirms the Reasonableness of the Fee Request............. 10

III.  THE REQUESTED EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED.......................................... 12

IV.  THE REQUESTED INCENTIVE AWARD TO LEAD PLAINTIFF IS FAIR .............. 14

V.    CONCLUSION.................................................................................................. 15

## TABLE OF AUTHORITIES

**CASES**

*Abbott v. Lockheed Martin Corp.*,
    2015 WL 4398475 (S.D. Ill. July 17, 2015) ...................................................... 14

*Alaska Elec. Pension Fund. v. Flowserve Corp.*,
    572 F.3d 221 (5th Cir. 2009) ............................................................................... 7

*Beesley v. Int'l Paper Co.*,
    2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ........................................................ 12

*Beezley v. Fenix Parts, Inc.*,
    2020 WL 4593823 (N.D. Ill. Aug. 7, 2020) ....................................................... 6

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
    2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) ............................................... 4, 11

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ....................................................................................... 3, 12

*Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*,
    897 F.3d 825 (7th Cir. 2018) ......................................................................... 5, 14

*Cook v. McCarron*,
    1997 WL 47448 (N.D. Ill. Jan. 30, 1997) ........................................................ 15

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998) .......................................................................... 15

*Florin v. Nationsbank of Ga., N.A.*
    34 F.3d 560 (7th Cir. 1994) ............................................................................. 3, 4

*Florin v. Nationsbank of Ga., N.A.*,
    60 F.3d 1245 (7th Cir. 1995) .............................................................................. 9

*Fryman v. Atlas Fin. Holdings, Inc.*,
    2023 WL 6536967 (N.D. Ill. Sep. 6, 2023) ....................................................... 6

*Furman v. At Home Stores LLC*,
    2017 WL 1730995 (N.D. Ill. May 1, 2017) ....................................................... 5

*Gaskill v. Gordon*,
    160 F.3d 361 (7th Cir. 1998) .............................................................................. 3

*Gastineau v. Wright*,
    592 F.3d 747 (7th Cir. 2010) ........................................................................... 11

*Goldsmith v. Tech. Sols. Co.*,
    1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ................................................... 6

iii

*Great Neck Capital Appreciation Inv. P'Ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
212 F.R.D. 400 (E.D. Wis. 2002) ...................................................................... 4

*Gupta v. Power Sols. Int'l, Inc.*,
2019 WL 2135914 (N.D. Ill. May 13, 2019) ..................................................... 6

*Hale v. State Farm Mut. Auto. Ins. Co.*,
2018 WL 6606079 (S.D. Ill. Dec. 16, 2018)...................................... 4, 8, 10, 12

*Harmon v. Lyphomed, Inc.*,
945 F.2d 969 (7th Cir. 1991) ........................................................................... 12

*Heekin v. Anthem, Inc.*,
2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) ................................................. 15

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................................................. 15

*In re Stericycle Sec. Litig.*,
35 F.4th 555 (7th Cir. 2022) .............................................................................. 4

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) .................................................................. 5, 8, 11

*Jorling v. Anthem, Inc.*,
836 F. Supp. 2d 821 (S.D. Ind. 2011) ............................................................... 7

*Kelsey v. Allin et al.*,
No. 14 Civ. 7837 (N.D. Ill. Nov. 16, 2017)................................................. 5, 13

*Kelsey v. Allin et al.*,
No. 14 Civ. 7837 (N.D. Ill. Nov. 16, 2017)..................................................... 13

*Macovski v. Groupon, Inc.*,
2022 WL 17256417 (N.D. Ill. Oct. 28, 2022).................................................... 6

*Matter of Cont'l Illinois Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992), *as amended on denial of reh'g* (May 22, 1992) ................................................................................................................. 4

*Pierrelouis v. Gogo Inc.*,
2022 WL 7950362 (N.D. Ill. Oct. 13, 2022)....................................... 6, 8, 14, 15

*Pierrelouis v. Gogo Inc.*,
No. 18-cv-04473 (N.D. Ill. July 26, 2022)...................................................... 15

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
2001 WL 1568856 (N.D. Ill. Dec. 10, 2001).................................................... 5

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................................ 6

iv

*Silverman v. Motorola Sols., Inc.*,
    739 F.3d 956 (7th Cir. 2013) ................................................................................. 6, 8

*Silverman v. Motorola, Inc.*,
    2012 WL 1597388 (N.D. Ill. May 7, 2012) ...................................................... 6, 8, 11

*Skelton v. Gen. Motors Corp.*,
    860 F.2d 250 (7th Cir. 1998) ..................................................................................... 11

*Smith v. Vill. of Maywood*,
    17 F.3d 219 (7th Cir. 1994) ........................................................................................ 11

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) ....................................................................................... 7

*Taubenfeld v. AON Corp.*,
    415 F.3d 597 (7th Cir. 2005) ............................................................................ 3, 5, 6, 9

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*,
    551 U.S. 308 (2007) .................................................................................................... 10

*Van Noppen v. InnerWorkings, Inc.*,
    2016 WL 11966414 (N.D. Ill. Nov. 2, 2016) ............................................................. 9

*Will v. Gen. Dynamics Corp.*,
    2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ...................................................... 11, 15

*Williams v. Rohm & Haas Pension Plan*,
    658 F.3d 629 (7th Cir. 2011) .................................................................................... 3, 4

*Wolff v. Cash 4 Titles*,
    2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) ........................................................... 10

**STATUTES**

15 U.S.C. § 78u-4(a)(4) ..................................................................................... 7, 14, 15

Lead Counsel, Levi & Korsinsky, LLP ("L&K") respectfully submits this memorandum of law in support of its motion for: (i) an award of attorneys' fees consisting of one-third of the Settlement Amount,[1] plus interest accrued thereon; (ii) reimbursement of $106,945.65 in litigation expenses plus interest thereon, and (iii) an award to Lead Plaintiff Howard M. Rensin, Trustee of the Rensin Joint Trust ("Lead Plaintiff"), in the amount of $20,000.[2]

## I.      PRELIMINARY STATEMENT

Lead Counsel diligently litigated this action for nearly two years, without compensation and bearing all the costs and risks of litigation. For the reasons set forth in Lead Plaintiff's Memorandum of Law in Support of Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation (the "Settlement Memorandum"), these efforts achieved a very favorable result for Settlement Class Members: obtaining $7,750,000 in recovery from the Defendants representing approximately 11.9% of maximum damages, while avoiding the considerable risks and expense of continued litigation. This result was achieved through Lead Counsel's skill and advocacy, as well as vigorous litigation that included, *inter alia*, overcoming Defendants' motion to dismiss (in large part), building the case through extensive investigation, and negotiating aggressively against a widely recognized defense firm on a fully contingent basis.

Thus, the requested one-third fee is fair and reasonable in light of the contingent nature of

---

[1] All capitalized terms not otherwise defined herein have the same meaning as those in the Stipulation of Settlement, dated April 25, 2025 (the "Stipulation") (ECF No. 74-1). Unless otherwise indicated: all emphasis is added; all internal citations, brackets, ellipses, footnotes, and quotations are omitted; all references herein to "¶_" are to paragraphs of the Declaration of Gregory M. Potrepka in Support of (I) Lead Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (II) Lead Counsel's Motion For Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Award to Lead Plaintiff, dated July 30, 2025 ("Potrepka Declaration" or "Decl."), filed herewith; and all references to "Ex.__" are to exhibits to the Potrepka Declaration.

[2] A proposed order will be submitted with Plaintiff's reply papers on August 27, 2025, after the deadline for objecting to the motion and requesting exclusion from the Settlement Class has passed.

1

the representation, the high quality of representation provided by Lead Counsel, and the risks faced in the prosecution. The risks were real—with Lead Plaintiff likely being challenged at class certification, summary judgment, trial, post-trial motions, and appeals for years into the future if the Settlement had not been reached. Lead Counsel's fee request is also consistent with similar fee requests that have been approved in securities class actions in the Seventh Circuit. Further, Lead Plaintiff, an experienced investor and retired attorney who supervised the litigation and is in the best position to judge Plaintiff's Counsel's work, has approved the fee request.

A lodestar cross-check further confirms the fairness and reasonableness of Lead Counsel's fee request. Lead Counsel spent a total of over 2,397 hours of professional time having a market value of $1,767,317.50 in prosecuting the claims in this litigation (Ex. 3, ¶3), and Liaison Counsel spent a total of over 46 hours of professional time having a market value of $54,576.25 (Gilden Decl., ¶6), combining for a total lodestar of $1,821,893.75. ¶84. The requested one-third award will result in a multiplier of approximately 1.4 of Plaintiff's Counsel's lodestar which is at the lower end of the range of reasonable multipliers that Seventh Circuit courts routinely award. ¶84.[3]

In addition, the litigation expenses for which Plaintiff's Counsel requests reimbursement are modest given the size and scope of this litigation and are common litigation expenses necessary for the prosecution of the action. Moreover, the requested award to Lead Plaintiff is reasonable given the considerable time spent and service that he provided to the Settlement Class. For these reasons, and as further set forth below, Lead Counsel respectfully submits that the requested award of attorneys' fees amounting to one-third of the Settlement Amount plus interest,

---

[3] "Plaintiff's Counsel" refers to L&K and Liaison Counsel, Cohen Milstein Sellers & Toll, PLLC ("Cohen Milstein").

reimbursement of litigation expenses in the amount of $106,945.65 plus interest, and an award of $20,000 to Lead Plaintiff are fair, reasonable, and adequate and should be granted.

## II.  THE REQUESTED ATTORNEYS' FEES ARE FAIR AND REASONABLE

### A.  Counsel Is Entitled to an Award of Attorneys' Fees from the Common Fund

Attorneys who obtain a recovery for the benefit of absent class members are entitled to a reasonable fee as compensation. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Florin v. Nationsbank of Ga., N.A.* ("*Florin I*"), 34 F.3d 560, 563 (7th Cir. 1994) ("[w]hen a case results in the creation of a common fund for the benefit of the plaintiff class, the common fund doctrine allows plaintiffs' attorneys to petition the court to recover its fees out of the fund."). Besides providing just compensation, awards of attorneys' fees from a common fund attract skilled counsel to represent those who seek redress for damages inflicted on classes of persons. *See, e.g., Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) ("The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel."). Here, Plaintiff's Counsel represented the Settlement Class on a fully contingent basis and obtained a recovery on their behalf, justifying compensation from the Settlement Amount. *See Boeing,* 444 U.S. at 478; *Florin I*, 34 F.3d at 563.

### B.  The Awarded Fee Should Be a Percentage of the Fund

The Seventh Circuit strongly endorses the percentage of the fund method for awarding fees, in which fees are awarded as a percentage of the common fund created by the settlement, because it closely replicates the manner in which attorneys are compensated in the market for contingent work. *See Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("it is commonplace to award the lawyers for the class a percentage of the fund . . . in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis"); *Taubenfeld v. AON Corp.*, 415 F.3d 597 (7th Cir. 2005) (affirming fee award under the percentage

3

of the fund method); *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636-37 (7th Cir. 2011) (rejecting objector's appeal and declining to "disturb the district court's assessment of fees" on a percentage-of-the-fund basis); *Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 6606079, at *7 (S.D. Ill. Dec. 16, 2018) (noting that while courts have discretion, "the percentage method is employed by the vast majority of courts in the Seventh Circuit"); *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *3 (S.D. Ind. Sept. 4, 2019) ("[i]n a common fund class action settlement, the Seventh Circuit Court of Appeals uses a percentage of the relief obtained rather than a lodestar or other basis" to award attorneys' fees).

The percentage of the fund method is particularly favored because of its administrability. *Florin I*, 34 F.3d at 566 ("that there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration."); *Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992), *as amended on denial of reh'g* (May 22, 1992) (noting it is easier to award a percentage "than it would be to hassle over every item or category of hours and expense[s] and what multiple to fix and so forth"); *Great Neck Capital Appreciation Inv. P'Ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 411 (E.D. Wis. 2002) (noting that the Seventh Circuit recognizes the advantages of the percentage of the fund, including "its relative objectivity and the fact that it is easily administered").

Accordingly, the law is well settled that fees awarded in securities class actions like this one should be calculated using the percentage of the fund method.

**C. The Requested Fee is Fair and Reasonable Under Applicable Seventh Circuit Factors**

The method for determining an appropriate percentage fee requires the Court to weigh available market evidence and assess the amount of work involved, the risks of nonpayment, and the quality of representation. *In re Stericycle Sec. Litig.*, 35 F.4th 555, 559 (7th Cir. 2022) (citing *Williams*, 658 F.3d at 635-36 (approving district court's method where "it weighed the available

4

market evidence and it assessed the amount of work involved, the risks of nonpayment, and the quality of representation")); *see also Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 832-33 (7th Cir. 2018) ("Factors that bear on the market price for legal fees include the risk of nonpayment, the quality of the attorney's performance, the amount of work necessary to resolve the litigation, and the stakes of the case.").

When determining the fairness and reasonableness of a fee request, the Seventh Circuit typically considers the following factors: (1) "awards made by courts in other class actions"; (2) "the quality of legal services rendered"; and (3) "the contingent nature of the case." *Taubenfeld*, 415 F.3d at 600; *see also In re Synthroid Mktg. Litig.*, 264 F.3d 712, 721 (7th Cir. 2001) (reasonableness "depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case"). Such factors strongly support the requested one-third fee.

1.  **Lead Counsel's Request for a One-Third Fee is Squarely in Line With Awards for Class Counsel Representations in Similar Matters**

When attorneys' fees are deducted from class damages, the district court must try to assign fees that mimic a hypothetical *ex ante* bargain between the class and its attorneys. *Synthroid*, 264 F.3d at 718-19. Importantly, "attorneys' fees from analogous class action settlements" are to be considered in this analysis. *Taubenfeld*, 415 F.3d at 600. In complex class action cases like this one, Seventh Circuit courts hold that percentages in the range of 33% to 40% of the recovery are appropriate. *E.g.*, *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) ("A customary contingency fee would range from 33 1/3% to 40% of the amount recovered."); *Furman v. At Home Stores LLC*, 2017 WL 1730995, at *4 (N.D. Ill. May 1, 2017) (Rowland, J.) ("Courts routinely hold that one-third of a common fund is an appropriate attorneys' fees award") (collecting cases); *Kelsey v. Allin et al.*, No. 14 Civ. 7837,

ECF No. 118 (N.D. Ill. Nov. 16, 2017) (Rowland, J.) (counsel "awarded one-third of the Gross Settlement Fund"); *Fryman v. Atlas Fin. Holdings, Inc.*, 2023 WL 6536967, at *4 (N.D. Ill. Sep. 6, 2023) (awarding one-third of the settlement fund as attorneys' fees in securities class action); *Macovski v. Groupon, Inc.*, 2022 WL 17256417, at *1 (N.D. Ill. Oct. 28, 2022) (same); *Pierrelouis v. Gogo Inc.*, 2022 WL 7950362, at *1 (N.D. Ill. Oct. 13, 2022) (same); *Beezley v. Fenix Parts, Inc.,* 2020 WL 4593823, at *1 (N.D. Ill. Aug. 7, 2020) (same); *Gupta v. Power Sols. Int'l, Inc.*, 2019 WL 2135914, at *1 (N.D. Ill. May 13, 2019) (same); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011) (stating that "an award of 33.3% of the settlement fund is within the reasonable range"); *Goldsmith v. Tech. Sols. Co.*, 1995 WL 17009594, at *8 (N.D. Ill. Oct. 10, 1995) ("courts in this District commonly award attorneys' fees equal to approximately one-third or more of the recovery").

Indeed, over the last twenty-five years, Seventh Circuit courts have awarded attorneys' fees of at least 33% in more than 50 common fund cases. Potrepka Decl., Ex. 7 ("Select Seventh Circuit Cases Awarding Attorneys' Fees of 33% or More in Common Fund Cases"). Accordingly, a one-third fee would closely mimic a hypothetical *ex ante* bargain between the class and its attorneys. Thus, Plaintiff's Counsel's request for an award of one-third of the Settlement Amount as attorneys' fees is well-supported by Seventh Circuit authority and is fair and reasonable.

## 2. Class Counsel Provided the Settlement Class with Quality Legal Services that Produced Excellent Results

The Seventh Circuit also considers the "quality of legal services rendered" when evaluating fee requests. *Taubenfeld,* 415 F.3d at 600; *see also Silverman v. Motorola, Inc.*, 2012 WL 1597388, at *3 (N.D. Ill. May 7, 2012) (approving fee request, noting "[t]he representation that Class Counsel provided to the class was significant, both in terms of quality and quantity"), *aff'd sub nom. Silverman v. Motorola Sols., Inc.*, 739 F.3d 956 (7th Cir. 2013). Moreover, the

6

"market price for legal fees depends" on the firm's "performance, [and] in part on the amount of work necessary to resolve the litigation" *Sutton v. Bernard*, 504 F.3d 688, 693 (7th Cir. 2007). Courts also acknowledge the heightened pleading standards imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA") make securities class actions very challenging to prosecute. *See Alaska Elec. Pension Fund. v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action."); *Jorling v. Anthem, Inc.*, 836 F. Supp. 2d 821, 831 (S.D. Ind. 2011) (PSLRA "mak[es] it more difficult for plaintiffs to survive a motion to dismiss, and thus receive the keys to unlock the discovery process").

Here, the quality of the legal services rendered strongly supports the reasonableness and fairness of Lead Counsel's request for attorneys' fees. Plaintiff's Counsel are highly experienced litigators who specialize in securities class actions brought under Federal securities laws. ¶¶91-92; Ex. 4 (Firm Resume); Gilden Decl., ¶3. Lead Counsel also invested considerable time and effort in representing the Settlement Class, including over 2,263 hours of attorney time and 134 hours of paralegal time. This began with an extensive investigation prior to filing Lead Plaintiff's initial and amended complaints, that included review and analysis of: (i) filings with the SEC by both TDS and USM; (ii) public reports, news articles, and research reports prepared by securities and financial analysts concerning the Companies; (iii) transcripts of investor calls conducted by the Companies' management; and (iv) press releases issued by and about the Companies. ¶81.

After preparing the complaints, Lead Counsel: continued investigating public reports and filings by TDS and UScellular; successfully opposed Defendants' motion to dismiss; propounded discovery requests to Defendants and third parties; prepared Lead Plaintiff's responses to Defendants' discovery requests; prepared for and attended a full-day mediation that included

extensive pre-mediation statements concerning all aspects of liability and damages; and continued adversarial negotiations for weeks afterward through the Mediator. ¶¶8, 81. These efforts support the requested fee. *Pierrelouis,* 2022 WL 7950362, at *2 (counsel's "skill, perseverance and diligent advocacy" warranted approval).

Notably, Plaintiff's Counsel developed the theory of this case its own, and through independent investigation at significant cost to Plaintiff's Counsel. ¶¶15, 87-88; Ex. 3 (noting Lead Counsel paid nearly $20,000 to a private investigator service for investigation services that were critical to the development of the facts alleged in the Complaint). In fact, prior to filing the Action, there were no parallel government investigations or shareholder derivative actions as are common when securities class actions are filed. The tenacity and skill of Lead Counsel to file and lead this Action supports the requested fee. *See Silverman,* 2012 WL 1597388, at *3 (finding the quality of counsel's representation to be significant where, as here, "there were no governmental investigations or prosecutions related to the alleged fraud upon which Class Counsel could rest their theory of the case" and counsel "investigated the facts and developed their theory of liability from scratch, involving significant time and expense").

**3. The Requested Attorneys' Fees are Fair and Reasonable in Light of the Contingent-Fee Nature of the Representation**

"[T]he market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear[.]" *Synthroid*, 264 F.3d at 721; *see also Silverman*, 739 F.3d at 958 ("The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel."). "Thus, [w]hen determining the reasonableness of a fee request, courts put a fair amount of emphasis on the severity of the risk (read: financial risk) that class counsel assumed in undertaking the lawsuit." *Hale*, 2018 WL 6606079, at *8. Indeed, "court[s] must also be careful to sustain the incentive for attorneys to continue to represent such clients on an inescapably

contingent basis." *Florin v. Nationsbank of Ga., N.A.*, 60 F.3d 1245, 1247 (7th Cir. 1995).

Here, this litigation was undertaken by Plaintiff's Counsel on a wholly contingent basis. Lead Plaintiff bore no costs or risks, while Plaintiff's Counsel paid all costs and invested significant time and effort into litigating this matter, bearing all the risk that such costs may not be reimbursed and thousands of hours of work may not be compensated. ¶87. Indeed, Defendants in this Action vigorously contested the allegations in the Amended Complaint and, absent the Settlement, would have continued to do so through summary judgment, trial, and any appeals. ¶¶43-55. Thus, the expenses and risks of nonpayment in this Action were significant and were borne solely by Plaintiff's Counsel, which strongly supports the fairness and reasonableness of the fee request. *See Taubenfeld*, 415 F.3d at 600 (approving fee request, noting that "lead counsel was taking on a significant degree of risk of nonpayment with the case").

## D. Lead Plaintiff Has Approved the Requested Fee

Lead Plaintiff is an experienced investor and a retired attorney familiar with contingency-fee based representations. Ex. 2, ¶¶2, 13. Moreover, Lead Plaintiff supervised the litigation and observed Plaintiff's Counsel's diligent efforts in this matter. ¶¶3, 5-8. Accordingly, Lead Plaintiff is in an excellent position to evaluate the fairness and reasonableness of Plaintiff's Counsel's requested award of attorneys' fees. That the Lead Plaintiff approves of the requested fee strongly supports the fairness and reasonableness of the fee request. Ex. 2, ¶12. *Van Noppen v. InnerWorkings, Inc.*, 2016 WL 11966414, at * 2 (N.D. Ill. Nov. 2, 2016) (lead plaintiff's approval of "requested attorneys' fees and payment of litigation expenses" as "fair and reasonable" supports court approval).

## E. The Reaction of the Settlement Class Supports the Reasonableness of the Fee Request

The reaction of the Settlement Class to date supports the requested fee. As of July 30, 2025, the claims administrator, SCS, has disseminated notice packets to 22,373 potential

9

Settlement Class Members and nominees informing them of, among other things, Lead Counsel's intention to apply to the Court for an award of attorneys' fees not to exceed one-third of the Settlement Fund and payment of up to $350,000 in expenses. *See* ¶106; Ex. 1-A (Notice) at 2. To date, no objections have been received and no person has requested to be excluded from the Settlement Class. ¶95; Ex. 1 (SCS Decl.), ¶¶14-15. Plaintiff's Counsel will address any future objections in its reply papers to be filed with the Court on August 27, 2025. ¶¶70, 95.

### F. Public Policy Supports Granting the Fee Request

Private securities actions are "an indispensable tool with which defrauded investors can recover their losses – a matter crucial to the integrity of domestic capital markets." *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 320 n.4 (2007). Furthermore, it is well documented that large defense firms representing corporations attract talented lawyers with very high compensation. Fee awards should serve to attract equally talented lawyers to plaintiff firms to take on the risks of contingent fee representation of plaintiffs in class action cases. *Hale*, 2018 WL 6606079, at *8 (compensation "incentivizes attorneys to accept and (wholeheartedly) prosecute the seemingly too-big-to-litigate wrongs hidden within the esoteric recesses of the law, ensuring that the attorneys are compensated for their work"); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *5 (S.D. Fla. Sept. 26, 2012) ("Mindful of the need to attract counsel of this high caliber, courts have recognized the importance of providing incentives to experienced counsel who take on complex litigation cases on a contingent fee basis so those cases can be prosecuted both efficiently and effectively."). Accordingly, the fee request here comports with public policy promoting meritorious class actions and compliance with the federal securities laws.

### G. The Lodestar Method Confirms the Reasonableness of the Fee Request

The "lodestar" method (multiplying reasonable hours by reasonable rates) to assess attorneys' fees is often used in fee-shifting cases or cases involving statutory fee awards. While

it can be used in securities class actions as a "cross-check" on fee awards, courts recognize it can create perverse incentives that reward inefficient staffing of cases, discourage early settlement talks, cause unnecessary delay in resolving disputes, and thereby increase the burden on the judicial system. *See, e.g., Synthroid*, 264 F.3d at 721 (lodestar approach creates the "incentive to run up the billable hours"); *Bell*, 2019 WL 4193376, at *5 ("the use of a lodestar cross-check is no longer recommended in the Seventh Circuit"); *Silverman*, 2012 WL 1597388, at *4 (holding it was unnecessary to consider lodestar and citing cases); *Will v. Gen. Dynamics Corp.*, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) ("The use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive.")

Although not required, a lodestar cross check confirms the fairness and reasonableness of Lead Counsel's fee request. The lodestar method computes fees by "multiplying a reasonable hourly rate by the number of hours reasonably expended" *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010). Courts in this Circuit have approved the use of current hourly rates, rather than historical rates, to calculate base lodestar figures in order to compensate counsel for the delay in receiving payment. *See Smith v. Vill. of Maywood*, 17 F.3d 219, 221 (7th Cir. 1994) ("A court may elect to use … current rates … as acceptable compensation for the delay in payment of fees"); *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 255 n.5 (7th Cir. 1998) ("The courts in this circuit generally use current rates"). Courts then adjust the lodestar by applying a multiplier to reflect factors such as the quality of the work performed, the contingent nature of the case, and the risk of non-payment. *See Skelton*, 860 F.2d at 258 (discussing rationale for risk multiplier and method of assessing it).

Here, Plaintiff's Counsel spent over 2,299 hours of attorney time and 145 hours of paralegal time litigating this Action through July 24, 2025. ¶¶83-84; Ex. 3, ¶3; Gilden Decl., ¶6.

11

Based on Plaintiff's Counsel's respective hourly rates, the lodestar totals $1,821,893.75. ¶84. This lodestar reflects Plaintiff's Counsel's diligent efforts in investigating and prosecuting this Action, as described in the Potrepka Declaration, which included investigation of the Defendants' conduct, filing an initial complaint, filing a motion for the Rensin Joint Trust to be appointed lead plaintiff, carefully preparing and filing an amended complaint, successfully opposing Defendants' hard-fought motion to dismiss, pursuing discovery which included obtaining and reviewing more than 5,000 pages of relevant documents from third-parties and more than 6,300 pages from Defendants, preparing and reviewing extensive pre-mediation briefing, attending mediation, and successfully negotiating and documenting the Settlement. ¶¶8, 79.

The fee request of one-third of the Settlement Fund amounts to $2,583,333.33—approximately 1.4 times Plaintiff's Counsel's lodestar. ¶84. This multiplier is within the range regularly awarded in securities class actions and other comparable litigation in the Seventh Circuit. *Harmon v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991) (multipliers "between one and four" are fair); *Hale*, 2018 WL 6606079, at *14 (2.83 multiplier reasonable). Accordingly, in light of the lodestar cross-check, Plaintiff's Counsel's fee request is eminently reasonable.

III. **THE REQUESTED EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED**

Plaintiff's Counsel requests payment for litigation expenses that were reasonably incurred and necessary to the prosecution of this Action. Such expenses are properly recoverable. *See Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *3 (S.D. Ill. Jan. 31, 2014) ("It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses, which includes such things as expert witness costs; computerized research; court reports; travel expense; copy, phone and facsimile expenses and mediation.") (citing *Boeing*, 444 U.S. at 478).

12

As set forth in the Potrepka Declaration, Lead Counsel and Liaison Counsel incurred $106,945.65 in litigation expenses on behalf of the class in the prosecution of the Action. ¶94; Ex. 3, ¶5; Gilden Decl., ¶7. The largest component of expenses related to the retention of experts in the fields of market efficiency, loss causation and damages, including Forensic Economics Inc. and Crowninshield Financial Research, and obtaining the necessary analyst reports and market studies to facilitate such work. *Kelsey*, No. 14 Civ. 7837, ECF Nos. 111, 118 (approving reimbursement for, *inter alia*, expert fees and analyst reports) (Rowland, J.). These experts were consulted at different points throughout the litigation, including on matters related to the preparation of the Complaint, the opposition to Defendants' motion to dismiss, reports on damages, preparation of the mediation submissions and responses thereto, negotiation of the Settlement, the preparation of the proposed Plan of Allocation, and preparation of the Claim Form. Specifically, $35,148.87, or approximately 33% of total expenses, was expended on such services. ¶99; Ex. 3, ¶5.

Lead Counsel also paid $19,601.00, or approximately 18% of the total out-of-pocket expenses, to a private investigator L.R. Hodges & Associates, Ltd., for investigation services that were critical to the development of the facts alleged in the Complaint. Ex. 3, ¶5. Without these investigative services, Lead Counsel would likely not have located and interviewed the confidential witnesses cited in the Complaint that the Court relied upon in ruling on the Defendants' Motion to Dismiss. *See* ECF No. 52, at 7-8, 14, 17-18, 22, 26.

Lead Counsel paid $15,554.00 for national newswires publishing information directly relevant and necessary to this Action and the Settlement, comprising 15% of the total expenses incurred. Ex. 3, ¶5. Plaintiff's Counsel also paid $12,314.22 for necessary legal database costs, comprising 12% of total expenses incurred. *Id.*; Gilden Decl., ¶7; *Abbott v. Lockheed Martin*

13

*Corp.*, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015) (reimbursing research costs). Lead Counsel paid $11,250.00, 11% of total expenses incurred, in mediation service fees to Phillips ADR Enterprises for the mediation services Ms. Yoshida provided and subsequent negotiations that led to the Settlement. Ms. Yoshida's efforts were critical in achieving a Settlement. Ex. 3, ¶5.

Lead Counsel also paid $6,603.07 to JND eDiscovery for hosting the database for documents produced in this Action for approximately ten months. Ex. 3, ¶5. Document hosting is an essential function in complex securities fraud actions, such as this, where thousands of pages of production documents need to be stored securely. Lead Counsel also paid $4,255.64 for travel, lodging, and meals. Ex. 3, ¶5. Lead Counsel also paid $1,503.60 to process servers and $715.25 in service fees and filing fees necessary to the litigation. Ex. 3, ¶5.

The Notice informed Settlement Class Members that Lead Counsel would apply for payment of expenses in an amount not to exceed $350,000. The amount of litigation expenses requested, $106,945.65, is far below the amount listed in the Notice and, to date, there has been no objection to the request for expenses. Accordingly, the requested expenses are fair, adequate, and reasonable, and should be approved. *Pierrelouis,* 2022 WL 7950362, at *1 (finding $139,347.45 expenses reasonable where notice included $350,000 limit).

## IV.     THE REQUESTED INCENTIVE AWARD TO LEAD PLAINTIFF IS FAIR

Courts recognize that "a named plaintiff is an essential ingredient of any class action." *Camp Drug Store*, 897 F.3d at 834. Therefore, "an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Id*. The PSLRA also specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" made be made. 15 U.S.C. § 78u-4(a)(4).

Lead Counsel seeks an award of $20,000 to Lead Plaintiff in connection with his efforts to oversee and assist with the litigation of the Action. Notably, despite opportunity under the

14

PSLRA's lead plaintiff process, no other plaintiff submitted a lead plaintiff application. Rather, Lead Plaintiff alone litigated this Action and, among other things, participated in regular discussions with Lead Counsel concerning the prosecution of the Action, the strengths and weaknesses of the claims, and potential settlement; reviewed all significant pleadings filed with the Court; reviewed Court orders and discussed them with Lead Counsel; consulted with Lead Counsel regarding settlement negotiations; responded to discovery; and evaluated and approved the proposed Settlement. Ex. 2, at ¶7. The time it took to engage in these tasks is time that could have been devoted to other personal or professional activities, and they are "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009).

Courts approve requests for incentive awards to compensate class representatives for their time and effort. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 incentive award to plaintiff); *Pierrelouis,* 2022 WL 7950362, at *2 (awarding $20,000 to lead plaintiff); *Pierrelouis v. Gogo Inc.,* No. 18-cv-04473, Dkt. 159-7 at 4 (N.D. Ill. July 26, 2022) (lead plaintiff devoted "dozens of hours" to the litigation); *Cook v. McCarron*, 1997 WL 47448, at *19 (N.D. Ill. Jan. 30, 1997) (awarding $25,000 incentive award); *Will v. Gen. Dynamics Corp.,* 2010 WL 4818174, at *4 (S.D. Ill. Nov. 22, 2010) (awarding $25,000 to each of three named plaintiffs); *Heekin v. Anthem, Inc.*, 2012 WL 5878032, at *1 (S.D. Ind. Nov. 20, 2012) (overruling objections and granting incentive awards of $25,000 to two representatives).

## V.     CONCLUSION

Wherefore, Plaintiff's Counsel respectfully request that the Court award (i) an award of attorneys' fees of one third of the Settlement Amount, plus interest accrued thereon while said amount was in escrow; (ii) reimbursement of $106,945.65 in litigation expenses plus interest, and (iii) an award to Lead Plaintiff in the amount of $20,000.

15

Dated: July 30, 2025

Respectfully submitted,

*/s/ Carol V. Gilden*

**COHEN MILSTEIN
SELLERS & TOLL, PLLC**
Carol V. Gilden (IL Bar: 6185530)
200 South Wacker Dr., Suite 2375
Chicago, Illinois 60606
Tel: (312) 629-3737
Fax: (312) 357-0369
cgilden@cohenmilstein.com

*Liaison Counsel for Lead Plaintiff
and the Settlement Class*

**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins (*pro hac vice*)
Gregory M. Potrepka (*pro hac vice*)
Morgan M. Embleton (*pro hac vice*)
David C. Jaynes (*pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
Fax: (212) 363-7171
gpotrepka@zlk.com
shopkins@zlk.com
membleton@zlk.com
djaynes@zlk.com

*Lead Counsel for Lead Plaintiff
and the Settlement Class*

16