**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| HOWARD M. RENSIN, TRUSTEE OF THE RENSIN JOINT TRUST, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ARRAY DIGITAL INFRASTRUCTURE, INC., FKA UNITED STATES CELLULAR CORPORATION, LAURENT C. THERIVEL, DOUGLAS W. CHAMBERS, and TELEPHONE AND DATA SYSTEMS, INC., <br><br> Defendants. | Case No. 1:23-cv-02764-MMR <br><br> <u>CLASS ACTION</u> <br><br> Honorable Mary M. Rowland |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED**
**MOTION FOR DISTRIBUTION OF SETTLEMENT FUNDS**

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ...............................................................................1

II.   DETRMINATION OF AUTHORIZED CLAIMS ....................................................2

     A.    Valid Claims....................................................................................................2

     B.    Deficient and Ineligible Claims .....................................................................4

           1.    Inadequately Documented Claims ..........................................................4

           2.    Ineligible Claims....................................................................................4

III.   DISTRIBUTION OF AUTHORIZED CLAIMS .....................................................5

IV.  RELEASE OF CLAIMS ........................................................................................6

V.    RECORDS RETENTION AND DESTRUCTION...................................................7

VI.  CONCLUSION .....................................................................................................7

ii

## TABLE OF AUTHORITIES

**Cases**

*Abrams v. Van Kampen Funds, Inc.*, et al.,

　1:01-cv-07538, Dkt. No. 263 (N.D. Ill. June 24, 2010)...................................................... 6

*Alaska Elec. Pension Fund v. Bank of Am., Corp.*,

　2020 WL 916853 (S.D.N.Y Feb. 26, 2020)........................................................................ 6

*Burns v. Elrod*,

　757 F.2d 151 (7th Cir. 1985) .............................................................................................. 3

*Craft v. Health Care Serv. Corp.*,

　2018 WL 5315204 (N.D. Ill. Oct. 26, 2018)....................................................................... 3

*In re Motorola Sec. Litig.*,

　2013 WL 12237555 (N.D. Ill. Mar. 5, 2013)...................................................................... 6

*Melucci v. Corcept Therapeutics Inc. et al.*,

　3:19-cv-1372, Dkt. No. 227 (N.D. Cal. Aug. 7, 2025) ...................................................... 6

*Ross v. Career Educ. Corp., et al.*,

　No. 1:12-cv-00276, Dkt. No. 141 (N.D. Ill. Sept. 10, 2015) ............................................. 7

*Snyder v. Ocwen Loan Servicing, LLC*,

　2019 WL 2103379 (N.D. Ill. May 14, 2019) ..................................................................... 3

*St. Lucie County Fire District Firefighters' Pension Tr. Fund et al. v. Motorola,*

　*Inc., et al.*,

　No 1:10-cv-00427, Dkt. No. 127 (N.D. Ill. Feb. 12, 2013) ............................................... 7

iii

Lead Plaintiff Howard M. Rensin, Trustee of the Rensin Joint Trust, individually and on behalf of all other members of the Settlement Class,[1] submits this memorandum of law in support of his Unopposed Motion for Distribution of Settlement Funds.

I.      PRELIMINARY STATEMENT

This Action has been settled pursuant to the terms of the Stipulation of Settlement dated April 25, 2025. ECF No. 74-1. The Stipulation resolved the Action in exchange for a cash payment of $7,750,000. *Id*. at ¶1.39. On September 4, 2025, the Court entered a Final Order and Judgment granting Lead Plaintiff's Motion for Final Approval of Class Action Settlement. ECF No. 94. Since then, the Court-appointed Claims Administrator, Strategic Claims Services ("SCS"), has received, evaluated, and logged claims from Authorized Claimants. SCS has completed all analyses and accounting procedures and quality control procedures in connection with the submitted Claims and has finalized its determination of which Claims are authorized and which are ineligible. *See* Declaration of Josephine Bravata Concerning the Results of the Claims Administration Process (the "SCS Declaration" or "SCS Decl.") at ¶9, submitted herewith as Exhibit 1 to the Declaration of Gregory M. Potrepka in Support of Lead Plaintiff's Unopposed Motion for Distribution of Settlement Funds ("Potrepka Declaration" or "Potrepka Decl.").

Accordingly, the Claims Administrator is now prepared to distribute the Net Settlement Fund to the Authorized Claimants. Lead Counsel therefore requests that the Court: (i) approve the administrative determinations of SCS accepting and rejecting Claims submitted in connection with the Settlement reached in the above-captioned Action as stated in the SCS Declaration; (ii) authorize the distribution of the Net Settlement Fund to Authorized Claimants, as identified in

---

[1] All capitalized terms not otherwise defined herein have the same meaning as those in the Stipulation of Settlement, dated April 25, 2025 (the "Stipulation") (ECF No. 74-1). Unless otherwise indicated: all emphasis is added; all internal citations, brackets, ellipses, footnotes, and quotations are omitted.

1

Exhibits B-1 and B-2 of the SCS Declaration; (iii) direct that distribution checks state that the check must be cashed within 180 days after the date of issuance, and that Authorized Claimants will forfeit all recovery from the Settlement if they fail to cash their distribution checks in a timely manner; (iv) approve the plan for any funds remaining after the initial distribution; (v) release claims related to the administration process; and (vi) authorize the destruction of the Claim Forms and all supporting documentation at an appropriate time no less than one (1) year after the distribution of the Net Settlement Fund.

## II.  DETRMINATION OF AUTHORIZED CLAIMS

Pursuant to the Preliminary Approval Order, Settlement Class Members wishing to participate in the Settlement were required to submit a Proof of Claim and Release form ("Claim Forms") online or by mail, postmarked or received, no later than August 27, 2025. *See* ECF No. 77 at ¶12(a). The Claims Administrator received and reviewed all submitted Claims, and to the extent that a Claim was deficient or ineligible in any regard, the Claims Administrator notified the Claimant of the defect(s) or condition(s) of ineligibility and advised the Claimant as to possible ways to cure the defect(s) or condition(s) of ineligibility. *See* SCS Decl. at ¶¶9-10. The Claims Administrator continued processing all Claims received up to September 26, 2025 and any additional information received or submitted prior to November 16, 2025 in response to deficiency notices. *Id*. at ¶11.

### A.  Valid Claims

The Claims Administrator received 13,658 Claim Forms. *Id.* at ¶9. Of the 13,658 Claim Forms, SCS determined that 7,840 were properly documented and valid. *Id*. at ¶¶9, 10(a). These valid claims represent Recognized Losses of $90,444,094.04 for common stock, $982,400.27 for Series UU preferred stock, and $1,576,707.70 for Series VV preferred stock. *Id*. at ¶10(a). Of the 7,840 valid claims, 7,837 were timely and three (3) were untimely but otherwise valid. *Id*. The

2

three late but otherwise valid claims represent $7,118.95 in Recognized Losses for common stock and $60.03 in Recognized Losses for Series VV preferred stock. *Id*. The late but otherwise valid claims are included in the overall number of valid claims, *i.e.*, 7,840. *Id*.

Lead Plaintiff requests that the Court accept all 7,840 valid Claims, including the untimely but otherwise valid claims. The untimely but otherwise valid claims have not caused delay in the distribution of the Net Settlement Fund or otherwise prejudiced any Authorized Claimant. Accordingly, Lead Plaintiff believes that it would be unfair to prevent otherwise valid Claimants from participating in the Net Settlement Fund solely because their Claims were submitted after the August 27, 2025 submission deadline, but while other Claims were still being processed. Indeed, the Stipulation expressly grants Lead Counsel "discretion … to accept late-submitted but otherwise valid Claims for processing by the Claims Administrator, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby." ECF No. 74-1 at ¶8.3(b). Moreover, "the Seventh Circuit has recognized that courts overseeing class settlement agreements have discretion within their equitable power to permit the filing of late claims but only where the equities, on balance, favor the new claimants." *Craft v. Health Care Serv. Corp.*, 2018 WL 5315204, at *5 (N.D. Ill. Oct. 26, 2018) *citing Burns v. Elrod*, 757 F.2d 151, 155 (7th Cir. 1985); *Snyder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at *10 (N.D. Ill. May 14, 2019) (ordering "the late claims … may therefore proceed forward as though submitted timely.").

Accordingly, Lead Plaintiff respectfully requests that the Court approve the 7,840 Claims as listed in Exhibits B-1 and B-2 of the SCS Declaration.

### B. Deficient and Ineligible Claims

#### 1. Inadequately Documented Claims

SCS initially identified 37 claims that were incomplete or had one or more defects or conditions of ineligibility. *See* SCS Decl. at ¶10(b). SCS sent deficiency notices advising each of these Claimants of the inadequacy and provided them the opportunity to cure the deficiency. *Id.*; *see also id.* at Ex. C (sample deficiency notice). Of the 37 deficient claims, 18 were successfully cured and considered valid. *See* SCS Decl. at ¶10(b). Claimants for the remaining 19 deficient claims either did not respond to the deficiency notice or responded with insufficient documentation and were sent a rejection notice setting forth the reason for their deficiency. *Id.* To date, none of the 19 deficient claimants has objected to or contested this determination, and thus those claims are considered rejected. *Id.*; *see also id.* at Ex. D (list of inadequately documented, Rejected Claims).

#### 2. Ineligible Claims

In addition to the 19 claims discussed in §II.B.1, SCS identified 5,799 Claim Forms that it recommends for complete rejection for reasons other than inadequate documentation. *See* SCS Decl. at ¶10(c). These ineligible claims include claims: (i) filed for common and/or preferred shares ("securities") of Telephone and Data Systems, Inc. ("TDS") purchased outside of the Settlement Class Period; (ii) with no Recognized Losses; (iii) filed for TDS securities that were received or transferred into an account, but not purchased; (iv) with TDS securities sold short; (v) that were duplicates; (vi) filed for securities other than TDS securities; and (vii) that were fraudulently filed. *Id.*; *see also id.* at Ex. E (list of Ineligible Claims). Such Claimants were sent rejection notices advising them of SCS's determination and none has objected or contested the determination. *See* SCS Decl. at ¶10(c); *see also id.* at Ex. F (sample ineligibility notice).

4

### III. DISTRIBUTION OF AUTHORIZED CLAIMS

Pursuant to the Stipulation, "[t]he Claims Administrator shall determine each Authorized Claimant's share of the Net Settlement Fund based upon each Authorized Claimant's recognized loss, as defined in the Plan of Allocation included in the Notice[.]" ECF No. 74-1 at ¶7.2. The Plan of Allocation sets forth the formula for calculating each claimant's Recognized Loss. *See* ECF No. 82-1, Ex. 1-A at 11-14.

Lead Counsel now seeks to distribute the Net Settlement Fund to the Settlement Class whose 7,840 Claims have been accepted as set forth in Exhibits B-1 and B-2 of the SCS Declaration, in proportion to their Recognized Losses as shown herein. The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution. However, if any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, and if Lead Counsel, in consultation with the Claims Administrator, determines it is cost-effective to do so, the Claims Administrator will conduct a second distribution to all Authorized Claimants in the initial distribution who cashed their distribution checks. SCS Decl. at ¶14(c). Following the second Distribution, additional redistributions will occur following the same process until no funds remain in the Net Settlement Fund or until Lead Counsel, in consultation with the Claims Administrator, determines additional distributions are no longer economically feasible. *Id*.

Finally, if any funds remain in the Net Settlement Fund after payment of any further Notice and Administration Costs and Taxes, and the Claims Administrator has determined that no further distributions would be feasible or economical, the remaining balance shall be contributed to a non-sectarian, not-for-profit organization identified by Lead Counsel. *Id*.; ECF

5

No. 74-1 at ¶7.5 (discussing *cy pres* distribution). "[C]ourts routinely approve cy pres awards to non-profit organizations when distributions to the class would not be feasible." *Alaska Elec. Pension Fund v. Bank of Am., Corp.*, 2020 WL 916853, at *2 (S.D.N.Y Feb. 26, 2020). Accordingly, Lead Counsel proposes that any such *cy pres* distribution, if necessary, be made to The Loyola University Chicago School of Law's Institute for Investor Protection. *See In re Motorola Secs. Litig.*, 2013 WL 12237555, at *1 (N.D. Ill. Mar. 5, 2013) (granting cy pres distribution to "recipients whose interests reasonably approximate those being pursued by the class."); *see also Melucci v. Corcept Therapeutics Inc. et al.*, 3:19-cv-1372, Dkt. No. 227 (N.D. Cal. Aug. 7, 2025) (granting request for The Loyola University Chicago School of Law's Institute for Investor Protection to be *cy pres* recipient); *Abrams v. Van Kampen Funds, Inc.*, et al., 1:01-cv-07538, Dkt. No. 263 (N.D. Ill. June 24, 2010) (same).

## IV.     RELEASE OF CLAIMS

To allow the full and final distribution of the Net Settlement Fund, the Court should bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. Accordingly, Lead Plaintiff respectfully requests that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, from any and all claims arising out of such involvement and bar all Settlement Class Members, whether or not they receive payment from the Net Settlement Fund,

6

from making any further claims against the Net Settlement Fund, Lead Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agent, or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amounts allocated to them under the terms of the distribution order. *See St. Lucie County Fire District Firefighters' Pension Tr. Fund et al. v. Motorola, Inc., et al.*, No 1:10-cv-00427, Dkt. No. 127 at p. 2 (N.D. Ill. Feb. 12, 2013); *Ross v. Career Educ. Corp., et al.*, No. 1:12-cv-00276, Dkt. No. 141 at p. 4 (N.D. Ill. Sept. 10, 2015).

## V. RECORDS RETENTION AND DESTRUCTION

Lead Plaintiff further respectfully requests that the Court order that: (i) in no less than one year after the final distribution of the Net Settlement Fund, the Claims Administrator may destroy the paper copies of the Claims and all supporting documentation; and (ii) in no less than one year after all funds have been distributed, the Claims Administrator may destroy the electronic copies of the claims and all supporting documentation.

## VI. CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court approve and enter the [Proposed] Order Granting Lead Plaintiff's Unopposed Motion for Distribution of Settlement Funds submitted herewith.

Dated: January 5, 2026          Respectfully submitted,

*/s/ Carol V. Gilden*

**COHEN MILSTEIN
SELLERS & TOLL, PLLC**
Carol V. Gilden (IL Bar: 6185530)
200 South Wacker Dr., Suite 2375
Chicago, Illinois 60606
Tel: (312) 629-3737
Fax: (312) 357-0369

7

cgilden@cohenmilstein.com

*Liaison Counsel for Lead Plaintiff*
*and the Settlement Class*

**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins (*pro hac vice*)
Gregory M. Potrepka (*pro hac vice*)
Morgan M. Embleton (*pro hac vice*)
David C. Jaynes (*pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
Fax: (212) 363-7171
gpotrepka@zlk.com
shopkins@zlk.com
membleton@zlk.com
djaynes@zlk.com

*Lead Counsel for Lead Plaintiff*
*and the Settlement Class*

8